JOINT EXHIBIT 1

Advancing the human and civil rights of people with disabilities
SELF-ADVOCACY ASSISTANCE ★ LEGAL SERVICES ★ DISABILITY RIGHTS EDUCATION ★ PUBLIC POLICY ADVOCACY ★ ABUSE INVESTIGATIONS

**VIA EMAIL**

May 31, 2023

Illinois Department of Juvenile Justice School District 428
Dr. Tresa Dunbar, Superintendent
Tresa.Dunbar@illinois.gov

Illinois Department of Corrections
Alyssa Williams, Acting Assistant Director
Alyssa.Williams@illinois.gov

Mr. Andrew Eulass
Illinois State Board of Education
100 N. First Street
Springfield, IL 62777
AEulass@isbe.net

**RE: Request for Due Process Hearing**

<u>Name of Student</u>: Antonio Monroe

<u>Date of Birth</u>: 9/10/2002

<u>Student's Address</u>: Illinois River Correctional Center, P.O. Box 999, Canton, IL 61520

<u>Telephone Number</u>: Detained so must request legal call

<u>School district</u>: Illinois Department of Juvenile Justice School District #428

<u>Other responsible entity</u>: Illinois Department of Corrections

Dear Dr. Dunbar, Ms. Williams and Mr. Eulass:

Please accept this correspondence as Equip for Equality's ("EFE") Request for a Due Process hearing under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1415(c)(E), the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12134, and Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794, on behalf of Antonio Monroe ("Mr. Monroe" or "Student"), as a result of the Illinois Department of Juvenile Justice District #428's ("District" or "District 428") and the Illinois

Department of Corrections' ("IDOC") failure to provide Mr. Monroe with a free appropriate public education ("FAPE") in the least restrictive environment ("LRE") as required by the IDEA, the Illinois School Code, and its implementing regulations. We are also seeking systemic relief for the District's and IDOC's complete failure to provide any special education services to all individuals entering IDOC with Individualized Education Programs ("IEPs"). We are seeking systemic relief for the provision of a FAPE in the LRE for these individuals.

**<u>Factual History/Nature of the Problem (to the extent known and available at this time)</u>**

Mr. Monroe is a 20-year-old young man with attention deficit hyperactivity disorder ("ADHD"). He has been deprived of an education since he first entered IDOC, the Illinois adult prison system, when he was 19 years old. Mr. Monroe wants to graduate from high school because many of the job opportunities he would like to pursue require a high school diploma.

Mr. Monroe was first found eligible to receive special education services as a child with attention deficit hyperactivity disorder in 2011 while enrolled in Peoria Public School District #150. Mr. Monroe continued to have an IEP through 8th grade, which he completed in 2017. Mr. Monroe became disengaged from school and, due to his legal involvement, did not have his IEP updated after 2017. Mr. Monroe entered IDOC in 2022, when he was 19 years old.

Mr. Monroe's most recent IEP, dated December 6, 2017, reflects that his ADHD affects his ability to focus, have impulse control, and self-regulate, which adversely affects his educational performance. Mr. Monroe required accommodations, including directions and portions read for clarification, extended time (50%), scheduled breaks, small group instruction, multiplication charts, the use of calculators, and text to speech. His IEP goals included demonstrating decision-making skills and responsible behaviors, demonstrating and applying a knowledge and sense of numbers, citing text to answer literal and inferential questions about the text, and participating in career exploration. He received specialized instruction in all subject areas in a therapeutic day school setting.

Mr. Monroe also had social-emotional struggles for which he required direct social work-related services and direct instruction to support social-emotional goals, as well as behavioral supports through a Behavior Intervention Plan ("BIP"). The modifications and accommodations in all academic subjects were also in place to support his social/emotional functioning.

Mr. Monroe entered IDOC on February 4, 2022, less than 5 months after turning 19 years old. The IEP that was updated December 6, 2017, was still in place; however, at no point since Mr. Monroe has been housed in IDOC has he received any credit-bearing education or special education services. He has made no progress toward a high school diploma during the last fifteen months in which he has been detained. Mr. Monroe is eager to receive the education to which he was and continues to be legally entitled but has never received. Mr. Monroe first learned that he was entitled to continue receiving special education services at IDOC when he spoke with attorneys from Equip for Equality on June 13, 2022.

1) <u>The District and IDOC are denying Mr. Monroe a FAPE by failing to provide him with special education services at any point since he entered IDOC custody on February 4, 2022.</u>

**a. The District and IDOC are jointly responsible for ensuring Mr. Monroe receive his FAPE from the beginning of his incarceration through his continuing period of eligibility.**

The law requires that IDEA protections apply to students incarcerated in state and local adult prisons. 34 CFR § 300.2(b)(1)(iv); see also *Donnell C. v. Illinois State Bd. of Educ*., 829 F. Supp. 1016 (N.D. Ill. 1993). The regulation states that the provisions of Part B of the IDEA "apply to all political subdivisions of the State that are involved in the education of children with disabilities, including: …state and local juvenile and adult correctional facilities; and are binding on each public agency in the State that provides special education and related services to children with disabilities, regardless of whether that agency is receiving funds under Part B of the Act."

Regardless of a student's incarceration, his IDEA substantive and procedural rights apply unless he falls within one of the statute's limited exceptions. See 20 USC § 1412(a)(1)(B)(ii); 34 CFR § 300.102(a)(2); 23 Ill. Admin. Code § 226.50(d). The limited exceptions are if a student is 18 through 22 and, "in the last educational placement prior to their incarceration in an adult correctional facility – [was] not actually identified as being a child with a disability under § 300.8; and did not have an IEP under Part B of the Act." 34 CFR § 300.102(a)(2)(i). Mr. Monroe does not fall within one of the exceptions. At his last educational placement, he was found eligible to receive special education and had an IEP in place when he entered IDOC custody on February 4, 2022. Accordingly, Mr. Monroe is entitled to receive his FAPE in the LRE and remains entitled to pursue a due process hearing to remedy the District and IDOC's failures during his continuing period of eligibility.

The District and IDOC both bear responsibility to ensure Mr. Monroe receives his FAPE in the LRE during his period of eligibility. Pursuant to 105 ILCS 5/13-40, the Illinois Department of Juvenile Justice is the school district responsible for the education of youth housed within the Department of Corrections who have not yet earned a high school diploma or high school equivalency and are 22 or under. Specifically, the statute states, "[O]n July 1, 2006, the Department of Corrections school district shall be transferred to the Department of Juvenile Justice. It shall be responsible for the education of youth within the Department of Juvenile Justice and inmates age 21 and under within the Department of Corrections who have not yet earned a high school diploma or a high school equivalency certificate." The Illinois Unified Code of Corrections includes the additional language, "the Department of Juvenile Justice shall provide educational programs for all committed youth so that all youth have an opportunity to attain the achievement level equivalent to the completion of the twelfth grade in the public school system in this state." 730 ILCS 5/3-6-2.

Additionally, 20 IAC 405.20 states that "the opportunity for educational programs shall be available in the Adult Divisions through the Department of Corrections School District #428 ("Department of Corrections School District #428" was the name of District 428 at the time the law was passed). It continues to state, "Adult Division educational programs shall include special education," and that "committed persons may be eligible to enroll in Special education regardless of test scores." 20 IAC 405.20(a)(1)(B), (d)(3). District 428 had and continues to have the responsibility to provide educational programming to Mr. Monroe for each year he was and continues to be eligible.

IDOC is also legally responsible for ensuring that the special education-eligible students they house receive FAPE in the LRE insofar as they must provide access ensure District 428 can actually provide eligible students with the services and environment necessary to effectuate their IEPs. The IDEA and implementing regulations explicitly state that its provisions apply "to all

political subdivisions of the State that are involved in the education of children with disabilities" including state and local juvenile *and* adult correctional facilities. 34 CFR § 300.2(b)(1)(iv). The U.S. Department of Education has also held that "every agency at any level of government that is involved in the provision of special education and related services to students in correctional facilities must ensure the provision of FAPE, even if other agencies share that responsibility." U.S. Dep't of Educ., Dear Colleague Letter of 12/5/14 at 5. Therefore, IDOC is responsible for providing the necessary classroom space, staff, access to educational staff, technology, and classroom materials for Mr. Monroe to receive his FAPE in the LRE. By failing to do so during his entire incarceration thus far, IDOC has similarly failed and continues to fail in its duty to meet Mr. Monroe's special education needs.

**b. The District and IDOC have failed and continue to fail to provide Mr. Monroe with a FAPE in the LRE because he entered IDOC with an IEP yet has not received any special education services since entering IDOC custody.**

According to available school records, the December 6, 2017, eligibility and IEP meeting was the last IEP meeting that ever took place for Mr. Monroe. Since entering IDOC custody on February 4, 2022, Mr. Monroe has received no high school education, no special education or related services, and no individualized behavioral supports. Mr. Monroe has had no IEP goals, accommodations, or modifications. Mr. Monroe has not been afforded an opportunity to participate in any IEP meetings. Neither did the District nor IDOC ever provide Mr. Monroe with any notice of his procedural safeguards.

IDOC does not have a school that offers high school education classes with special education services. IDOC offers Adult Basic Education ("ABE") and General Education Development ("GED") classes. Individuals in IDOC are only eligible to enroll in GED classes if they have tested out of the ABE program. They must test at the 8th grade level to enroll in GED training. 20 IAC 405.20(d)(2). The ABE and GED training programs are not credit-bearing, high school programs, and they do not offer any special education services. There are waitlists to access these programs and priorities go to those with sooner outdates.

It is unlikely that Mr. Monroe has the necessary academic skills to pass the ABE due to his disability. Even if Mr. Monroe had been allowed to participate in the ABE program, it is not a substitute for special education services as required under IDEA. No special education services have been offered to him, nor have any classes towards earning a high school diploma.

**c. In order to place Mr. Monroe in the position he would have been in had he received his FAPE in the LRE, the District and IDOC must be required to provide him with access to a regular high school program housed within IDOC while he remains incarcerated.**

As a student entitled to special education services in the least restrictive environment, Mr. Monroe is entitled to learn in a high school environment with his non-disabled peers. Illinois River Correctional Center does not have a high school program, thus inherently denying Mr. Monroe a FAPE in the LRE. Without a high school program within IDOC facilities, the District and IDOC essentially have only one placement option for students – learning alone in a cell. This is akin to an extremely restrictive homebound placement. Importantly, many states have high school programs with special education services in their state prison systems. Illinois is an outlier given the complete absence of any high school and special education programming.

According to Mr. Monroe's December 6, 2017, IEP, his educational placement consisted of direct services in a special education classroom for both academic and social-emotional learning. Without classroom peers, Mr. Monroe is unable to receive these services in a natural, integrated setting. This is what his IEP team determined he required to access a FAPE. Thus, the District and IDJJ continue to deprive Ms. Monroe of the individualized placement in the LRE to which he is entitled under the IDEA.

Mr. Monroe's IEP additionally references specific needs that could only be addressed in a classroom setting. Mr. Monroe struggled with appropriate decision-making and responsible behavior in the school setting, as well as with attendance and assignment completion. He had functional goals focused on appropriate decision-making and self-regulation. These are skills that are much more difficult to practice if Mr. Monroe is not learning with peers. Mr. Monroe also struggled with impulsively saying inappropriate things in the classroom – something that is impossible to work on if he is not in a classroom environment.

2) T<u>he District and IDOC systemically fail to provide all special education students with a FAPE in the LRE while they are detained at IDOC, which is in violation of the IDEA</u>.

The District and IDOC are categorically denying all special education students their right to a FAPE in the LRE. Because there is no high school or special education programming within IDOC, the District and IDOC systemically violate the law by failing to provide any special education services in a high school program. The District and IDOC immediately terminate the provision of all services under the IDEA once a student with a disability is incarcerated in an IDOC facility, thus completely denying special education students of all rights under the IDEA.

Without a systemic remedy addressing the lack of high school and special education programming within IDOC, it is impossible to remedy Mr. Monroe's individual needs and provide him with a FAPE in his LRE.

**<u>Issues (to the extent known and available at this time)</u>**

The following are the issues that we ask this Impartial Hearing Officer to resolve:

1. Whether the District failed and continues to fail to provide Mr. Monroe a FAPE when it failed from February 4, 2022, to the present to provide Mr. Monroe with:

    a. Any special education services, including:
        i. Specialized reading instruction;
        ii. Specialized math instruction;
        iii. Specialized instruction in all content areas required to receive a high school diploma; and
        iv. Social-emotional and behavioral services;
    b. Any related services, including social work services;
    c. Any accommodations and modifications to support his academic, social-emotional, and behavioral needs;
    d. Any IEP goals;
    e. Any IEP meetings; and
    f. Any triennial re-evaluations;

2. Whether the District failed and continues to fail to provide Mr. Monroe with a FAPE in the LRE by denying him the ability to attend a high school program housed in IDOC with non-disabled peers from February 4, 2022, to the present;

3. Whether IDOC denied and continues to deny Mr. Monroe a FAPE from February 4, 2022, to the present by refusing to provide him with the necessary classroom space, security staff (if required by IDOC), and access to educational staff, technology, and other classroom materials so he could receive needed special education services and pursue his high school diploma in the LRE;

4. Whether the District and IDOC violated and continue to violate Mr. Monroe's rights under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act by excluding him from the participation in, and denying him the benefits of, special education programming from February 4, 2022, to the present;

5. Whether the District and IDOC have failed and continue to fail to provide all incarcerated individuals that were and are eligible to receive special education at the time of their incarceration with a FAPE by failing to provide them with the specialized instruction, accommodations/modifications, and related services they require to make progress towards appropriate IEP goals and to earn a high school diploma;

6. Whether the District and IDOC have failed and continue to fail to provide all incarcerated individuals that were and are eligible to receive special education at the time of their incarceration with placement in the LRE by failing to create a regular high school program housed in IDOC where these individuals have the ability to learn with their non-disabled peers; and

7. Whether the District and IDOC have violated and continue to violate the rights of all incarcerated individuals that were and are eligible to receive special education services at the time of their incarceration under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act by excluding them from the participation in, and denying them the benefits of, special education programming while housed in IDOC.

**Proposed Resolution (to the extent known and available at this time)**

To remedy the issues identified above, Mr. Monroe requests the Impartial Hearing Officer to order the following:

1. The District and IDOC have denied Mr. Monroe a FAPE from February 4, 2022, to the present;

2. The District shall restore Mr. Monroe's eligibility to receive special education, convene an IEP meeting, and develop an appropriate IEP based on the results of Mr. Monroe's Independent Educational Evaluation ("IEE") that includes:
    a. Appropriate, measurable annual goals;
    b. Specialized reading instruction;
    c. Specialized math instruction;
    d. Specialized instruction in all content areas required to receive a high school diploma;
    e. Social-emotional and behavioral services;

f. Related services, including social work services; and
g. Accommodations and modifications to support Mr. Monroe's academic, social-emotional, and behavioral needs;

3. The District shall provide Mr. Monroe with access to a high school education curriculum in the LRE in order to earn his high school diploma. Should Mr. Monroe be released during this litigation, the District shall fund the opportunity for Mr. Monroe to access educational services and complete his high school diploma in the community;

4. IDOC shall provide Mr. Monroe with the necessary classroom space, IDOC staff, educational staff, access to technology, and other classroom materials necessary for Mr. Monroe to receive his FAPE in the LRE;

5. The District shall provide additional compensatory services (e.g., additional tutoring, clinical social work services) Mr. Monroe requires to be placed in the position he would have been had he received his FAPE in the LRE, based on the results of Mr. Monroe's IEE;

6. The District and IDOC shall reimburse Equip for Equality for the neuropsychological IEE by Dr. Sonia Cooper;

7. The District and IDOC shall develop a special education program that allows all incarcerated individuals who are eligible for special education services to receive specialized instruction, accommodations/modifications, and related services they require to make progress towards appropriate IEP goals and to earn a high school diploma;

8. The District and IDOC shall develop a high school program housed in IDOC that allows all special education students to receive a FAPE in the LRE and the opportunity to learn alongside their non-disabled peers;

9. The District and IDOC shall be required to identify all incarcerated individuals who were eligible to receive special education services at the beginning of their incarceration but did not receive those services, and develop a plan for providing compensatory services to those students; and

10. Any other relief deemed appropriate by the Impartial Hearing Officer.

Please contact us at jessicar@equipforequality.org or at (217) 210-4001 and olga@equipforequality.org or at (312) 895-7321.

Sincerely,

EQUIP FOR EQUALITY

Jessica Range, Attorney for Student

Olga Pribyl, Attorney for Student

Cc: Illinois Department of Juvenile Justice
Jullian Brevard,Chief Legal Officer
jullian.brevard@Illinois.gov

Illinois Department of Corrections
Robert Fanning, IDOC General Counsel
Robert.fanning@illinois.gov

**ILLINOIS STATE BOARD OF EDUCATION**
**IMPARTIAL DUE PROCESS HEARING**

| | | |
|---|---|---|
| AM | ) | |
| | ) | |
| | ) | CASE NO. 2023-DP-0256 |
| v. | ) | |
| | ) | |
| IL Dept of Juvenile Justice SD#428 | ) | D. MICHAEL RISEN |
| | ) | Impartial Hearing Officer |
| | ) | |

## RULING ON DISTRICT'S MOTION TO DISMISS

On May 31, 2023, AM, a 21 year-old incarcerated adult, filed a due process complaint notice (DPCN) alleging his rights under the *Individuals with Disabilities Education Act* (IDEA) were violated when he was not provided with special education services when he entered an adult correctional facility through the Illinois Department of Corrections (IDOC). In addition, AM's complaint identifies the Illinois Department of Juvenile Justice District #428 (IDJJ SD #428) as a second responsible party. Hereinafter, IDOC and IDJJ SD #428 shall be referred to as the District.

The Adult Student (hereinafter referred to as the Student) is represented by legal counsel. IDOC and IDJJ are also represented by legal counsel. The District acknowledges the Student as eligible for special education services under the IDEA per the Student's last IEP dated 12/6/2017. [1]

**Complaint allegations**:

1. The District failed to provide the Student with a free appropriate public education (FAPE) by failing to provide him with special education services at any point since he entered IDOC custody on February 4, 2022.
    a. The Student alleges that IDJJ SD #428 and IDOC are jointly responsible for ensuring (the Student) receive his FAPE from the beginning of his incarceration through his continuing period of eligibility.
    b. The IDJJ SD #428 and IDOC have failed and continue to fail to provide (the Student) with a FAPE in the least restrictive environment (LRE) because he entered IDOC with an IEP yet has not received any special education services since entering IDOC custody.
    c. In order to place (the Student) in the position he would have been in had he received his FAPE in the LRE, the IDJJ SD #428 and IDPC must be required to provide him with access to a regular high school program housed within IDOC while he remains incarcerated.

[1] *See* District's July 10, 2023 Motion to Dismiss p. 1.

2. The IDJJ SD #428 and IDOC systemically failed to provide all special education students with a FAPE in the LRE while they are detained at IDOC, which is a violation of the IDEA.

**Issues identified in the Student's DPCN**:

1. Whether the District failed and continues to fail to provide (the Student) a FAPE when it failed from February 4, 2022 to the present to provide (the Student) with:
   a. Any special education services, including:
      i. Specialized instruction in reading, math and all content areas required to receive a high school diploma;
      ii. Social-emotional and behavioral service;
   b. Social work services;
   c. Appropriate accommodations and modifications to support his academic, social-emotional, and behavioral goals
   d. Any IEP goals;
   e. Any IEP meetings; and
   f. Any triennial re-evaluations.
2. Whether the District failed and continues to fail to provide (the Student) with a FAPE in the LRE by denying him the ability to attend a high school program housed in IDOC with non-disabled peers from February 4, 2022 to the present;
3. Whether IDOC denied and continues to deny (the Student) a FAPE from February 4, 2022, to the present by refusing to provide him with the necessary classroom space, security staff, (if required by IDOC), and access to educational staff, technology, and other classroom materials so he could receive needed special education services and pursue his high school diploma in the LRE:
4. Whether the District and IDOC violated and continue to violate (the Student's) rights under the Americans with Disabilities ACT (AD) and Section 504 of the Rehabilitation act (Section 504) by excluding him from the participation in, and denying him the benefits of, special education programming from February 4, 2022 to the present;
5. Whether the District and IDOC have failed and continue to fail to provide all incarcerated individuals that were and are eligible to receive special education at the time of their incarceration with a FAPE by failing to provide them with the specialized instruction, accommodations/modifications, and related services they require to make progress towards appropriate IEP goals and to earn a high school diploma;
6. Whether the District and IDOC have failed and continue to fail to provide all incarcerated individuals that were and are eligible to receive special education at the time of their incarceration with placement in the LRE by failing to create a regular high school program housed in IDOC where these individuals have the ability to learn with their non-disabled peers; and
7. Whether the District and IDOC have violated and continue to violate the rights of all incarcerated individuals that were and are eligible to receive special education services at the time of their incarceration under the Americans with Disabilities Act and Section 504 of the Rehabilitation act by excluding them from the participation in, and denying them the benefits of, special education programming while housed in IDOC.

**District's Motion**

On July 10, 2023, the District filed a motion to dismiss and alleged the following:

1. IDOC should be dismissed as a party to the aforementioned DPCN indicating the IHO lacks jurisdiction over the IDOC.
2. The IHO should dismiss the claims under Section 504 and the ADA as neither fall under the scope of authority of an IDEA impartial hearing officer.
3. The IHO should dismiss the Parent's request to order IDOC to develop a high school program housed in IDOC, as well as, the Parent's request to have the IHO order the IDOC and the District to identify all incarcerated individuals with an IEP and develop a plan for providing compensatory services to those students. The District indicates that the IDEA due process rules and regulations provide for individual student relief and not something that this instant IHO believes could be analogous to a class action form of relief.

**Parent's Response**

On July 18, 2023, the Parent filed a response to the District's Motion to Dismiss and provided the following:

1. The District failed to timely file their objections and are precluded from having their relief granted. The Parent references the IDEA's procedures for filing a motion to dismiss for insufficiency and references the timelines stated therein.[2]
2. The Parent alleges the IHO has jurisdiction over IDOC as IDOC is a "Necessary Party". The Parent notes that IDOC controls every aspect of the student's life and therefore the Student cannot receive any services of any kind, including any special education programming or services without the "full participation"[3] of IDOC.
3. The Parent indicates that the IDEA explicitly states that adult correctional facilities are an accountable entity.[4]
4. The Parent further indicates that Illinois IHO powers are expansive.
5. The Parent alleges that the request for systemic relief is required for the Student's remedy to be implemented and should not be stricken.

**Discussion**

I. With regard to the Parent's allegation that the District failed to timely file the motion to dismiss, the Parent relies on the timelines associated with a motion to dismiss for the insufficiency of the complaint. The Instant Motion to dismiss was not identified as a motion to dismiss for insufficiency and therefore the timelines associated with a motion to dismiss for insufficiency do not apply to the instant motion.

II. Impartial hearing officers under the IDEA and Illinois rules and regulations are vested with the authority to adjudicate DPCN disputes that an individual student and/or the

[2] *See* Parent's response p.2
[3] *Id.*
[4] *See* 34 C.F.R. §300.2(b)(10(iv).

"identification, evaluation or educational placement of a child with a disability, or the provision of a free and appropriate public education (FAPE) to a child."[5] Additionally, IHOs have authority to adjudicate disputes related to the placements or manifestation determinations made in connection with the discipline of a student with a disability.[6]

III. The District asserts that excluding the IDOC in the instant DPCN was decided in a similar case by another Illinois IHO. With regard to the referenced previous decision entered by another Illinois IHO regarding the exclusion of the IDOC as a responsible party, the deciding IHO noted in that referenced decision that the IHO made the determination to exclude because the exclusion of the IDOC related to what the IHO characterized as "financial disputes between public agencies."[7] In the instant DPCN, the IHO agrees with the Parent that the IDOC controls every aspect of the Student's life and including the IDOC as a "necessary party" is appropriate, both grounded in the IDEA statutory language[8] and out of necessity, should an order be entered as a result of the hearing in favor of the Student. However, it is important to note that impartial hearing officers are not vested with the authority to enforce the rulings that are entered after a hearing has concluded and a written decision entered.

**Ruling**

The District's motion to dismiss is partially sustained and partially overruled.

1. It is clear that the IDEA considers the IDOC as a necessary party in the instant DPCN. The IDEA states in part: "Apply to all political subdivisions of the State that are involved in the education of children with disabilities, including: …(iv) State and local juvenile and *adult correctional facilities*;"[9] (emphasis added). By definition and acknowledgment by the District, the IDOC is an adult correctional facility. With regard to the District's motion to remove the IDOC as "necessary party," the motion is overruled.

2. The IHO agrees with the District that nothing in the IDEA or Illinois rules and regulations provides authority for hearing officers to adjudicate claims under the ADA or Section 504 of the Rehabilitation Act of 1973. Therefore, the District's motion to dismiss the Parent's allegations under the ADA and Section 504 are sustained.

3. Similarly, the IHO agrees with the District that nothing in the IDEA or Illinois rules and regulations provide authority for hearing officers to enter orders that impact any student other than the Student involved in the instant DPCN. The hearing officer is vested with the authority to enter rulings and orders that impact the student involved in the filed DPCN. Any relief requested involving others who are not the student in the instant DPCN is not authorized by either the IDEA or Illinois statutes, rules and regulations.

---

[5] *See* 34 C.F.R. §300.507(a).
[6] *See* 34 C.F.R. §300.532 (a).
[7] *See* District Exhibit IHO Janet Maxwell-Wickett p. 2.
[8] *See* 34 C.F.R. §300.2(b)(1)(iv).
[9] *Id.*

Thus, the District's motion to dismiss the Parent's claims for relief for all students with IEPs currently housed within the IDOC is sustained. As a result, the Parent's issues identified in the Parent's filed DPCN as Issues 4, 5, 6 and 7 are excluded from consideration at any hearing for this filed DPCN. Issues 1, 2 and 3 will be the issues to be decided in any upcoming hearing conducted on the Student's behalf.

**So ordered: July 19, 2023**

/s/ D. Michael Risen
D. Michael Risen, Phd
Impartial Hearing Officer

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the Ruling on the District's Motion to Dismiss was sent as a PDF file via electronic mail only and sent to:

Ms. Stephanie Jones, Esq.
Kriha Boucek
2 Transam Plaza, Suite 450
Oakbrook Terrace, Il 60181
@: stephanie@krihaboucek.com

And

Ms. Jessica Range, Esq.
Ms. Olga Pribyl, Esq.
Equip for Equality
20 N. Michigan Ave, Suite 300
Chicago, Il 60602
@: JessicaR@equipforequality.org
@: olga@equipforequality.org

And

Mr. Andy Eulass, Esq., Due Process Coordinator
@: aeulass@isbe.net

On July 19, 2023

*/s/D. Michael Risen*
D. MICHAEL RISEN, PH.D.
DMR EDUCATIONAL CONSULTING LLC
222 E. SURREY LANE
EAST PEORIA, IL 61611
mikerisen@msn.com
309-694-2995 (fax)
309-202-4654 (phone)

**Case Number: 2023-DP-0256**
**AM v. Illinois Department of Juvenile Justice #428**
**Hearing Officer: Michael Risen**

Illinois State Board of Education
Special Education Services
100 North First Street
Springfield, Illinois 62777

**Impartial Due Process Hearing Decision**
**Cover Page**

Instructions: Complete this form and return it along with the decision. The information collected on this form will be used for the purpose of indexing the decision by subject matter as required by 23 Illinois Administrative Code 226-695

**District Illinois Dept of Juvenile Justice #428** **Phone: 217-557-1030**

**Superintendent** **Dr. Tresa Dunbar**
**Address** **1112 S. WabashAve, Chicago, IL 60605**
**Represented by** **Ms. Stephanie Jones, Esq. and Ms. Cassie Black, Esq.**

**Student Name** **AM**

**Address** **Pinckneyville Correctional Center 5835 IL-154, Pinckneyville, IL 62274**
**Represented by** **Ms. Jessica Range, Esq., and Ms. Olga Pribyl, Esq.**

**<u>Date and Timelines</u>**

**Date of Written Request:5/31/22**
**Date of Pre-hearing Conf: 04/02/24**

**Date of Hearing: 05/01, 05/02, 05/03, 05/06/24, and 5/13/24 (Written Closing Briefs)**
**Date of Decision: May 21, 2024,**

**<u>Summary of Decision</u>**

**Student filed the due process complaint notice alleging two main issues: Failing to provide the Student with an IEP from February 2, 2022 to the present that includes specialized instruction in reading, math and all content areas required for a high school diploma and appropriate related services focused on social emotional and behavioral services; IEP goals and the appropriate modifications and accommodations to support those goals; and completion of a triennial reevaluation. Second, failing to provide a high school program housed in the IDOC with the Student's non-disabled peers. The preponderance of the evidence supported the Student and the IHO ruled in favor of the Student awarding the relief requested by the Student including compensatory education.**

ILLINOIS STATE BOARD OF EDUCATION
SPECIAL EDUCATION DUE PROCESS HEARING

| | | |
|---|---|---|
| **IN THE MATTER OF** | ) | **ISBE CASE NO. 2023-DP-0256** |
| **AM** | ) | |
| | ) | **D. Michael Risen, PhD** |
| **v.** | ) | Impartial Due Process |
| | ) | Hearing Officer |
| **ILDJJ #428** | | |

## Introduction

1. The DPCN came before the IHO on or about June 12, 2023.[1]
2. On June 13, 2023, the District filed the State resolution form indicating the parties waived resolution in favor of State sponsored mediation.[2]
3. On June 28, 2023, the Student filed a motion to compel the completion of an Independent Educational Evaluation (IEE) at public expense and the IHO granted the District until July 3, 2023 to respond.[3] The District did not file a response to the Parent's motion and the IHO granted the motion to compel an IEE at public expense.[4]
4. On July 10, 2023, the District filed the District's response, along with a motion to dismiss the Illinois Department of Corrections (IDOC) from the proceedings.[5] Upon receipt, the IHO granted the Student until July 13, 2023, to file a response.[6] The Student sought additional time due to a medical issue and the IHO granted the request.[7] The Student filed the response on July 13, 2023.[8]
5. On July 19, 2023, the IHO issued the ruling on the District's motion to dismiss which contained three issues for consideration. The IHO denied the motion to dismiss the IDOC from the proceedings and sustained the District's motions to

[1] Hearing officer exhibits are identified as "IHO" followed by the exhibit/page number; Student's Exhibits will be referred to as "P" followed by the exhibit/page number; and District Exhibits will be referred to as "D" followed by the exhibit/page number. The parties also submitted joint documents that are labeled with a "J" followed by the exhibit/page number.
[2] *See* IIHO Exhibit (4) p. 30-31.
[3] See IIHO Exhibit (10) pp. 44-46.
[4] *See* IIHO Exhibit (20) pp. 80-83.
[5] *See* IHO Exhibit (14) p. 50-62.
[6] *See* IHO Exhibit (15) p. 63.
[7] *See* IIHO Exhibit (16) p.64.
[8] *See* IIHO Exhibit (19) pp. 70-79.

dismiss the Student's 504 issue and the Student's issue to include other incarcerated IEP students in the ruling.[9]

6. The parties scheduled the mediation meeting for August 8, 2023, but failed to reach any agreement.[10]
7. On January 24, 2024, the parties scheduled the Pre-Hearing Conference (PHC). At the outset, the Parties agreed to change the PHC to a status conference to provide time for the parties to consider the results of the IEE.[11]
8. On March 31, 2024, the IHO provided the parties with the IHO's interpretation of the issues and proposed relief.[12]
9. On April 2, 2024, the parties participated in and completed the PHC and the IHO provided a summary of the PHC to the parties.[13]
10. On April 22, 2024, the Student filed the compensatory education plan required by the IHO.[14]
11. On April 23, 2024, the Student filed a memorandum of law detailing the authority of the IHO to award the Student with an order requiring the IDOC to provide the Student with an accredited High School program within the prison system.[15]
12. On April 24, 2024, the parties filed the required witness schedule for the four days of hearing.[16] Also, on April 24, 2024, the IHO granted the District the opportunity to respond to the Student's memorandum of law by 5pm on April 29, 2024.[17]
13. On May 6, 2024, the presentation of witnesses and exhibits concluded. The IHO entered into the permanent record those documents addressed during witness testimony or addressed by other reference. For the Student, the IHO excluded documents labeled as Exhibits 12, 13 and 15 from the record. The IHO excluded District documents labeled as Exhibits 2-5, and excluded Joint Exhibits labeled as Exhibits 2-11 and 13-16. The IHO notified the parties via email. The email noted the parties could request a status call to discuss any concerns.[18] Neither party submitted a request to discuss the excluded documents.

---

[9] *See* IIHO Exhibit (21) p. 84-89.
[10] *See* IIHO Exhibit (23) p. 93.
[11] *See* IIHO Exhibit (57) p. 161.
[12] *See* IHO Exhibit (72) pp. 189-196
[13] *See* IHO Exhibit (74) at pp. 200-207.
[14] *See* IHO Exhibit (78) pp. 212-214.
[15] *See* IHO Exhibit (83) pp. 219-225.
[16] *See* IHO Exhibit (82) pp. 227-229.
[17] *See* IHO Exhibit (84) p. 226.
[18] *See* IHO Exhibit (95) p. 275.

**Jurisdiction**

14. The HO conducted the hearing and rendered a decision in the DPCN pursuant to the Individuals with Disabilities Education Act (IDEA)[19] 20 U.S.C. §§ 1400 *et. Seq.*, and its implementing regulations, 34 C.F.R. §§ 300.1 *et. Seq.*, and the Illinois School Code, 105 ILCS 5/14-8.02a *et. Seq.*, and the implementing regulations, 23 Ill Admin. Code § 226.0 *et. Seq.*

**Background**

15. At the time of the filing of this DPCN, the complaint involved a 20-year-old male Student who last attended Peoria Public Schools District #150 in the ninth grade during the 2016-17 school year. At the age of 19, the Student became disengaged from school during the 2016-17 school year and entered the IDOC in 2022. The Student's IEP has not been updated since 2017.[20] The Student is a student with a disability and the Peoria Public Schools identified the Student's eligibility category as Attention Deficit Hyperactivity Disorder (ADHD).[21] The Student filed the DPCN due to the Student's allegations that the IDOC should provide the Student with a Free Appropriate Public Education (FAPE) in the Least Restrictive Environment (LRE).

**Issues and Proposed Relief**

16. During the pre-hearing conference, the parties certified two issues. Did the District deny the Student a FAPE in the LRE by:[22]
    1. Failing to provide the Student with an IEP from February 4, 2022, to the present, that includes:
        i. Specialized instruction in reading, math and all content areas required for a high school diploma and appropriate related services focused on social emotional and behavioral services;
        ii. IEP goals and the appropriate modifications and

---

[19] In 2004, Congress reauthorized the Individuals with Disabilities Education Act as the Individuals with Disabilities Education Improvement Act. *See* Pub. L. No. 108-446, 118 Stat. 2647 (Dec. 3, 2004), effective July 1, 2005. The amendments provide that the short title of the reauthorized and amended provisions remains the Individuals with disabilities Education Act. *See* Pub. L. 108-446, § `0`, ``8 Stat. at 2647; 20 U.S.C. §1400 (2006) ("This chapter may be cited as the 'Individuals with Disabilities Education Act.'").
[20] *See* IHO Exhibit (1) p. 4.
[21] Id.
[22] *See* IHO Exhibit (74) pp. 201-202.

accommodations go support those goals;

iii. Completion of a triennial reevaluation.

2. Failing to provide a high school program housed in IDOC with the Student's non-disabled peers.[23]

17. Should the preponderance of the evidence support the Student, the Student seeks the following relief:

i. Provide the Student with an IEP that includes the recommendations of the IEE completed by Dr. Sonia Cooper and other IEE providers and include in the IEP:

  i. Specialized instruction based upon appropriate goals in reading, math and all content areas required for high school graduation;

  ii. Related services targeting social-emotional and behavioral needs;

  iii. Required goals with the appropriate modifications and accommodations required to achieve those goals.

ii. Either in the current environment of the department of corrections, or in the community, if released ruing the pendency of the due process proceedings, provide ethe Student with access to a high school program designed to enable the Student to earn a high school diploma.

iii. Compensatory education to make the Student whole from the lack of services since February 2, 2022.

iv. The IHO previously ruled on July 19, 2023, that the District must pay Equip for Equality for the cost of the completion of the IEE submitted by Dr. Sonia Cooper. That order stands regardless of whether the Student prevails at the hearing. The Student also seeks reimbursement to Equip for Equality for the cost of the other IEEs.[24]

[23] *See* IHO Exhibit (74) p. 201.
[24] *See* IHO Exhibit (74) p. 201-202.

**Stipulated Facts**

The parties stipulated to the facts listed below:

**IDJJ and School District No. 428**

1. The Illinois Department of Juvenile Justice (IDJJ) is an Illinois State Agency pursuant to Article V of the Illinois Constitution. It currently maintains five Youth Centers for juvenile offenders throughout the State of Illinois.
2. IDJJ was established in 2006 as an agency separate from the Illinois Department of Corrections (IDOC).
3. When IDJJ was established as an independent agency in 2006, School District No. 428 was removed from IDOC and placed within the IDJJ.
4. In 2006, IDJJ was statutorily assigned responsibility for the education of the youth within IDJJ and inmates age 21 or under within the Department of Corrections who have not yet earned a high school diploma or a high school equivalency certificate.
5. Since 2006, IDOC provides adult educational services, including GED preparation, vocational training, and life skills training, for individuals housed in IDOC facilities.
6. There are no IDJJ programs currently housed within an IDOC facility and IDJJ's staff is not currently assigned to any IDOC facilities.
7. Currently, IDJJ employs general and special education teachers in each of its facilities, who support students in earning credit through a blended education model.
8. IDJJ uses a blended education model through an online platform called Connexus concurrent with support from classroom teachers.
9. As a school district in Illinois, School District No. 428 awards credits towards graduation for individuals who participate in their education programs and services.
10. Individuals who earn 16.75 credits towards high school graduation are awarded a high school diploma from the School District.
11. School District No. 428 operates year-round. The 2023-2024 School Year began August 1, 2023, and ends on May 30, 2024, with summer session running through June and July. School years typically run from early August through the end of May, although the exact start and end dates vary. Summer session always runs through June and July.

**Illinois Department of Corrections**

12. IDOC is the Illinois agency responsible for adult correctional institutions in the State of Illinois. Also established pursuant to Article V of the Illinois Constitution, IDOC maintains 46 correctional facilities across the State of Illinois.

13. IDOC provides individuals in custody with an educational assessment to determine the individual's achievement level.
14. The test conducted by IDOC is the Test of Adult Basic Education (TABE) test. Scores on this test are used to determine placement of individuals in educational programming.
15. IDOC offers the following adult education on a limited basis depending on an inmate's outdate and available space:
    a. Adult basic education, which is an open-entry program designed to provide individual instruction in basic math, reading and life skills for those individuals who score below a 6.0 on the TABE test.
    b. Pre-GED, which is an open-entry program designed to improve individuals' basic math, reading and life skills to improve TABE test results from 6.0 to 9.0 for entry into the GED program.
    c. General Education Development, which is an open-entry program which will prepare an individual for the GED test as well as life skills. To qualify, an individual needs a score of 9.0 or above on the TABE test.
    d. People are often put on waitlists for the adult education programming.
16. Select facilities offer vocational programs that require a high school diploma or equivalent to enter. Those programs include custodial maintenance, construction, horticulture, food service, auto body, auto mechanics, cosmetology, nail technology, print management, barbering, welding, and warehousing.
17. IDOC also offers college degree programs through several Illinois college partners.
18. IDOC also offers a range of mental health services.
19. IDOC does not currently offer special education and related services. IDOC also does not identify students who may be eligible for special education and related services upon entry.
20. IDOC and IDJJ have no plan in place for IDOC to notify IDJJ of students with disabilities and for IDJJ to notify IDOC of a student's special education status.
21. There is no interagency agreement between IDJJ and IDOC regarding the provision of special education and related services to adults in IDOC.

**Student AM**

22. AM was born on September 10, 2002.
23. AM spent his academic career in Peoria School District No. 150.
24. AM was first identified for special education and related services in 2011 under the eligibility of Other Health Impaired based on a diagnosis of Attention Deficit Hyperactivity Disorder.
25. AM's most recent Individualized Education Program (IEP) was developed on December 6, 2017, by the Peoria School District.
26. The IEP placed AM in a public therapeutic day program with all instruction to take place outside of the general education environment.

27. The IEP indicated that AM would receive 22 minutes per week of school social work services.
28. AM entered the Illinois Department of Corrections on February 4, 2022, when he was 19 years old.

**Legal Stipulations**

29. The Parties stipulate that Dr. Michael Krezmien is an expert in special education and juvenile and adult correctional education.
30. If the Hearing Officer finds that A.M. was denied a FAPE and that he is entitled to compensatory education to remedy the denial of a FAPE, compensatory education should be calculated on a qualitative basis.

**IHO Findings of Fact**

After considering all the evidence as well as the arguments of counsel, this Hearing Officer's Findings of Fact are as follows:

1. On November 13, 2011, the Peoria Public Schools identified the Student as a student with a disability whose eligibility included Other Health Impaired (OHI).[25] The initial placement included 80% in the general education program.[26]
2. On December 21, 2011, the IEP team determined the Student's placement as a therapeutic day school.[27]
3. On December 6, 2017, the IEP team affirmed the continuing placement of the Student in a therapeutic day school.[28] The Student's IEP reflected modifications and accommodations of read directions for clarification, extended time of 50%, scheduled breaks, small group instruction, multiplication charts, use of calculators, and text to speech.[29] Specialized services included social work for 22 minutes weekly.[30]
4. At some point after the December 6, 2017, IEP team meeting, the Student disengaged from school.[31]
5. On February 4, 2022, the Student entered the Illinois Department of Corrections with a release date of November 3, 2036.[32] The District acknowledged the

[25] *See* Joint Exhibit (10) at p. J 222.
[26] *See* Joint Exhibit (10) at p. J 229.
[27] *See* Joint Exhibit (9) at p. J 213.
[28] *See* Joint Exhibit (1) at p. J 031
[29] *Id.* At pp. J 028-29.
[30] *Id.* At p. J030.
[31] *See* Testimony of Student
[32] *Id.*

District's obligations under the IDEA and Illinois rules and regulations and acknowledged the agency did not meet these requirements.[33]

6. On April 20, 2022, the IDOC scheduled the Student to take the Test of Adult Basic Education. The Student also had a required court appearance and could not sit for the test. The IDOC did not reschedule the test even though the IDOC policies provide for rescheduling. The IDOC representative categorized this action as a mistake.[34]
7. On July 7, 2022, (at age 19) the Student filed a grievance against the IDOC and specifically requested that IDOC provide the Student with the Student's previously identified special education program and services.[35] No one in the education department of IDOC ever saw the Student's denied grievance.[36] Since the Student's incarceration, the IDOC failed to identify the Student as a student with a disability, failed to offer any educational services or to develop an IEP for the Student.[37] The IDOC policies do not provide any Child Find procedures, do not inform incarcerated individuals at orientation of available special education services and do not provide procedures for informing ILDJJ #428 of any eligible students under the control of IDOC.[38] IDOC personnel agree the agency should implement such agreement.[39] There is no record that the Student's parent ever revoked consent for special education services. Once the Student reached the age of majority, the Student did not revoke consent for special education services. Upon entering the IDOC, the Student did not know the Student could receive special education services. After consulting with his current legal representatives while incarcerated, the Student expressed interest in receiving special education services to earn the Student's high school diploma.[40] The Student's goal upon earning the Student's high school diploma includes enrolling in the IDOC program to learn skills necessary to earn employment in the construction industry.[41] Current IDOC policies indicate that the Student's entitled educational

[33] *See* Testimony of IDOC Director of Adult Education
[34] *Id.*
[35] *See* PD Exhibit at p. PD 105.
[36] *See* Testimony of IDOC Director of Adult Education.
[37] *See* testimony of the Student and stipulated facts #21-22.
[38] *See* Testimony of IDOC Director of Adult Education.
[39] *Id.*
[40] *See* Testimony of the Student.
[41] *Id.*

services could be delayed for a significant amount of time.[42] Currently IDOC's educational offerings do not include high school coursework, although offering high school coursework poses no further risk than the current offerings related to incarcerated individuals earning the GED.[43] Further, IDOC could make use of current technologies to offer high school courses, as well as special education programs and related services within the facility.[44]

8. On October 26, 2022, the IDOC denied the Student's grievance.[45] The IDOC counselor who reviewed the grievance cited the reason for the denial as "does not meet the DR 504.810 date of the incident."[46] The referenced policy covers issues related to a failure to timely file the grievance.[47]
9. On September 13, 2023, the Student completed a neuropsychological evaluation.[48] The District employed a clinical psychologist to review the report and the psychologist reported agreement with the report and the results of the report.[49] The results of the evaluation reflect the Student presents as a kinesthetic learner and would benefit from multisensory learning. The Student presented with limited working memory, language deficits, significant academic deficits in reading, math, written expression and oral language.[50] Attempting to address the Student's deficits with programs like GED preparations are ineffective.[51] Recommendations to address the Student's deficits included eight specific accommodations.[52] The Student requires approximately 16 speech and language services to address the Student's moderate receptive-expressive language disorder.[53]
10. On April 15, 2024, an expert in reading and students with dyslexia examined the IEE completed by Dr. Sonia Cooper and recommended 5 specific strategies to address the student's deficits in reading, writing, and math while considering the

[42] *See* Testimony of IDOC Director of Adult Education.
[43] *Id.*
[44] *Id.*
[45] *Id.* And PD Exhibit (17) at p. PD105.
[46] *Id.*
[47] *See* Testimony of IDOC Director of Adult Education.
[48] *See* Student Exhibit (1) at p. PD001.
[49] *See* Testimony of District's Expert Witness.
[50] *See* Testimony of Student's neuropsychologist and Student's Exhibit (1) at pp. PD006-007.
[51] *Id.* At PD009.
[52] *Id.* At PD012-013.
[53] *Id.* At p. PD081-82.

Student's challenges created by the Student's dyslexia.[54] The recommendations included one-hour of daily instruction five days per week for each of the strategies listed below:

a. Use of the speech-to-print curriculum known as SPELL-LINKS™ implemented by an LBS 1 special education teacher certified in the software program.

b. *Writing our World* for written expression deficits implemented by an LBS 1 special education teacher certified in the software program.

c. *Chris Woodin Math* for the Student's math deficits implemented by an LBS 1 special education teacher certified in the software program.

d. Utilize assistive technology instruction like Learning Ally, Bookshare, Co:Writer, or Kami determined and taught by an assistive technology expert.

e. Implement the programs for one hour per school day for four years utilizing standard practice monthly progress reporting.[55]

11. On April 17, 2024, the Student completed an IEE for speech and language.[56] The results indicate the Student presents with a moderate receptive-expressive language disorder.[57] The Student presents with below average scores in general language ability, receptive language index, and expressive language index.[58] To address the Student's needs related to the language disorder, the Student requires 60 minutes per week of speech and language services with 30 minutes per week individual and 30 minutes per week group therapy.[59] The Student requires the speech and language services to access the other areas of his education.[60]

12. On April 19, 2024, an expert for the Student filed a report regarding the Student's educational needs and the programs and services provided to the Student by IDOC and ILDJJ #428.[61] 87.2% of correctional facilities in the United States provide incarcerated individuals with secondary education programs.[62]

---

[54] *See* Testimony of Redwood Literacy CEO.
[55] *See* Student Exhibit (7) at pp. PD065-066 and testimony of Redwood Literacy CEO.
[56] *See* Student Exhibit (9) at p. PD072.
[57] *Id.* At p. PD080.
[58] *See* Parent Exhibit (9) p. PD075.
[59] *See* Parent Exhibit (9) p. PD081 and testimony of speech and language pathologist.
[60] *See* Testimony of speech and language pathologist.
[61] *See* Student Exhibit (4) pp. PD027-PD037 and testimony of Dr. Michael Krezmien.
[62] *See* Footnote 2 in Student Exhibit (4) p. PD031.

**DISTRICT'S ARGUMENT**

1. The District argued that the Student failed to notify the IDOC and the ILDJJ #428 of his eligibility under the IDEA until he filed a grievance on October 20, 2022.
2. The District submitted that courts have ruled that students lose their rights under the IDEA if the Student no longer attends a public school and the student's rights under the IDEA are only reactivated when the student who is 18 or older "objectively manifests an intent to re-enroll in public school or request an evaluation."[63]
3. The District also asserts that the Student's eligibility ended on the day before the Student's 21st birthday.[64] The District asserts that Illinois law only requires the ILDJJ #428 to provide an education to students who are incarcerated under "the age of 21"[65] The District stated: "The legislature could have changed this part of the statute in 2007 and in 2021 when the legislature statutorily teased out Illinois' interpretation of 'age 21' under Article 14, but it did not."[66] The District further argued that the IDEA provides an exception to the FAPE requirement that supports the ILDJJ #428 interpretation of the age requirement under Illinois law. That exception states that the obligation to make a FAPE available to all children with disabilities does not apply with respect to 'children aged 3, 4, 5, 18, 19, 20, or 21 in a State to the extent that its application to those children would be inconsistent with state law or practice, or the order of any court, respecting the provision of public education to children of those ages.'[67]
4. The District also asserted that the concept of the LRE does not strictly apply in this instant case. The District quotes the Department of Education comments to the IDEA from 1999: 'The requirement that disabled students be educated with nondisabled students does apply to students with disabilities who are in correctional facilities, to the extent that the requirement can be met consistent with the terms of their incarceration, except to the extent modified

---

[63] *See* IHO Exhibit (96) at p. 279.(IHO notes the case law referenced applied to a tuition reimbursement case).
[64] *Id.* At p. 280.
[65] *Id.* At p. 281.
[66] *Id. At p. 283.*
[67] *Id.*

under the authority in §300.311. One way the LRE requirements could be met for students with disabilities in prisons would be to include them in the educational activities of nondisabled prisoners and provide appropriate services in that environment.'[68]

5. The District quoted the 7th Circuit's decision in *Petrina,* and the D.C. Circuit's decision in *Reid* and argued that any compensatory education awarded must be 'reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have applied in the first place.'[69]
6. The District also addressed the Student's IEE provider's recommendation that the Student receive compensatory education until the Student earned a Lexile score of 1350. The District quoted research that suggests that typical students earn a Lexile growth of approximately 64L between the 7th and 8th grades. Utilizing this data point, the District argues that the Student would, under the best of circumstances, have to demonstrate growth consistent with 700l points within a 27 month to 36-month period. The District argued that this type of growth does not seem reasonable to expect.[70]
7. The District then further argued that if the IHO awards the student with compensatory education, the IHO should calculate the amount of compensatory education utilizing the one hour per day as stipulated in the Illinois statutes governing home/hospital instruction.[71] Then, later in the District's argument, the District suggests that the IHO must 'balance the equities' if compensatory education is awarded by the IHO.[72] The District's argument conflicts with the submitted stipulated facts that indicated the parties agreed the IHO should utilize the qualitative method to determine any compensatory education.[73]
8. The District argued that the Court has ruled that IHOs should not substitute 'their own notions of sound educational policy for those of the school

[68] *Id.* At p. 287.
[69] *Id.* At p. 288.
[70] *Id.* At p. 289.
[71] *Id.* At p. 293.
[72] *Id. At pl 292.*
[73] *See* Stipulated Fact #34 at IHO Exhibit at p.252.

authorities which they review.'[74]

9. Finally, the District sought an order from the IHO that dismissed the Student's complaint asserting the Student did not meet the Student's burden of persuasion.[75] The District also sought an order from the IHO that limited the Student's eligibility to the day before the Student's 21st birthday, that strikes all requests for compensatory education including for speech and language, that denies the Student's request for a high school education leading to a diploma, adopts the one hour per day of compensatory education recommended by the State's expert, that compensatory education awarded be grounded in the *Rowley* and *Endrew F.* standards, that any awarded compensatory education be limited by the Student's three year absence from school, and that any awarded compensatory education be sufficiently flexible to allow the ILDJJ #428 and the IDOC to implement the order in a medium security prison environment.[76]

## STUDENT'S ARGUMENT

1. The Student argued that the compensatory education clock began when the IDOC and the ILDJJ #428 failed to allow the Student to complete the TABE test.[77]
2. The Student submits that failing to attend school prior to the Student's incarceration does not relieve the IDOC and the ILDJJ #428 from their statutory responsibility to provide the Student with a FAPE and references another Illinois due process decision in support.[78]
3. The Student points out that the exception to provide incarcerated students with a FAPE is narrow and limited to those students not previously identified as a student with a disability while in their most recent educational placement or did not have an IEP prior to the student's incarceration.[79]
4. The Student asserts that the Illinois law extending a student's IDEA eligibility to the age of 22 is supported by the acknowledgement of the age of 22 that is contained in another Illinois statute.[80]

---

[74] *Id.* At p. 295.
[75] *Id.* At p. 300.
[76] *Id.* At pp. 300-301.
[77] *See* IHO Exhibit (97) at p. 311 and IHO FOF #6.
[78] *Id.* At p. 315.
[79] *Id.* At p. 316.
[80] *Id.* At p. 317.

5. The Student further points out that Illinois has expanded the IDEA eligibility for all students with disabilities to either the day before the student's 22nd birthday, or the end of the student's school year if the student turns 22 during the school year.[81] Further, the Student notes that "nowhere" does the Illinois School Code "indicate a sweeping categorical exclusion of incarcerated students from the law."[82]
6. The Student also submits that Illinois statutes prohibit the denial of enrollment of students by school districts simply because the student has exceeded the mandatory age of enrollment and cites the relevant Illinois School Code citation.[83]
7. The Student submits that the District's argument that the courts have ruled in other cases that would then require the Student bear the responsibility to inform the IDOC and the ILDJJ #428 of the Student's eligibility does not apply in the instant case as the case law referenced by the District all dealt with instances of unilateral placement.[84]
8. The Student also submitted that both the IDEA, Illinois laws, and the court in the Northern District of Illinois have all affirmed that the IDEA applies to incarcerated students.[85]
9. The Student also pointed out that OSEP has indicated that incarcerated students are entitled to a FAPE and 'every agency at any level of government involved in the provision of special education and related services' "are responsible for ensuring that eligible incarcerated students are able to access a FAPE 'even if other agencies share that responsibility.'[86]
10. The Student submits that the IDEA explicitly requires school districts to provide special education supports and related services that will allow a student with disabilities to "be involved in and make progress in the general education."[87] The Student notes that the IDEA further requires that those services "prepare them for further education, employment, and independent living."[88]
11. The Student noted that courts in other jurisdictions have ruled that it is indeed

[81] *Id.* At p. 318.
[82] *Id.*
[83] *Id.* At p. 320.
[84] *Id.* At pp. 320-321.
[85] *Id.* At p. 323.
[86] *Id.* At p. 324.
[87] *Id.* At p. 327.
[88] *Id.*

important for students with disabilities who have not yet earned a high school diploma are still entitled to special education programs and services that enable the student to work towards a high school diploma even if the student already earned a GED. In New Mexico, a state complaint ruled that the department of corrections violated the IDEA by not allowing incarcerated students with disabilities to work toward their high school diploma as stated in the student's IEPs.[89]

## **Conclusions of Law**

Based upon the parties Stipulated Facts, the IHO's Findings of Fact, the arguments of counsel, as well as this Hearing Officer's own legal research, the Conclusions of Law of this Hearing Officer are as follows:

1. There are two issues for consideration. The first issue alleges that the District failed to provide the Student with an IEP from February 4, 2022 to the present that provided the Student with specialized instruction in reading, math and all content areas needed to earn a high school diploma and provide the appropriate related services, IEP goals, appropriate modifications and accommodations and a triennial evaluation. When considering whether a school district has provided a student with a FAPE, hearing officers and courts must first consider the rulings of the Supreme Court in the decisions in *Rowley*[90] and *Endrew F.*[91] In the *Rowley* decision the Court established a two-prong test for determining the provision of a FAPE. The first prong requires a determination that school districts have followed the procedures as required by the IDEA. If the determination is that the District did not follow the procedures of the IDEA, the IHO need look no further. If the determination is that the District did follow the procedures, then the IHO must consider the second prong which requires that the provision of specialized instruction and related services be reasonably calculated to enable the child to receive educational benefit. In *Endrew F.*, the Court affirmed the two prongs of Rowley and expanded on the definition of the provision of a FAPE by indicating that hearing officers or a reviewing court may fairly expect that school districts should be able to offer a cogent and responsive explanation for their decisions that then

[89] *Id.*
[90] *See Board of Education of Hendrick Hudson School District v. Amy Rowley* 458 U.S. 176 (1982),
[91] *See Endrew F. v. Douglas County School Dist.* RE–1, 580 U.S. 2017.

demonstrates the IEP is reasonably calculated to enable the child to make progress appropriate in light of his circumstances. Further, the Court in *Endrew F.* indicated that School districts must give students with disabilities the chance to make meaningful, "appropriately ambitious" progress. It is important to consider the meaning of the terms “appropriately” and “ambitious.” Webster’s dictionary defines the term “appropriate” as “in a manner suitable for the occasion or purpose.” Webster’s dictionary defines the term “ambitious” as: “having or showing a bold forcefulness in the pursuit of a goal.” Thus, when considering the meaning of the terms used by the Court in *Endrew F.*, the standard imposed on school districts is to provide a program of specialized services that are bold enough to enable the child to move towards the goal of earning a high school diploma considering the child’s unique circumstances. When students have been charged with or convicted of a crime the conviction and resulting incarceration does not diminish their substantive rights, procedural safeguards, and remedies provided under the IDEA to students with disabilities.[92] The IDEA generally requires state education agencies to make FAPE available to all children with disabilities ages 3 to 21.[93] This general obligation to provide FAPE does not apply to an incarcerated student between the ages of 18 to 21, if, prior to the student's conviction as an adult offender and incarceration in an adult correctional facility, the student was not actually identified as a child with a disability under the IDEA; and did not have an IEP under Part B of the IDEA.[94] If the student previously received services under an IEP and left school prior to incarceration, or if the student had been actually identified as a child with a disability, the student retains the student’s rights to a FAPE.[95] An Illinois District Court held that pretrial detainees have a right to a FAPE under the IDEA.[96] The agency responsible for providing a FAPE to students incarcerated in adult prisons may need to look at a student's

[92] *See Unified Sch. Dist. No. 1 v. Connecticut Dept. of Educ.*, 35 IDELR 30 (Conn. Ct. App. 2001); *Nashua Sch. Dist. v. State of New Hampshire*, 23 IDELR 427 (N.H. 1995); *Alexander S. v. Boyd*, 22 IDELR 139 (D.S.C. 1995); *Donnell C. v. Illinois State Bd. of Educ*., 20 IDELR 514 (N.D. Ill. 1993); and *Prison Adult Educ. Program*, 113 LRP 51158 (SEA DE 07/03/13). *See also Dear Colleague Letter,* 64 IDELR 249 (OSEP/OSERS 2014) (Absent a specific exception, all IDEA rights, including child find, apply to incarcerated students and their parents).
[93] *See* 34 CFR §300.101.
[94] *See* 34 CFR §300.102 (a)(2)(i).
[95] *See* 34 CFR §300.102 (a)(2)(ii).
[96] *See Donnell C. v. Illinois State Bd. Of Educ.*, 20 IDELR 514 (N.D. Ill. 1993).

educational history to determine a student's ongoing right to IDEA services.[97] The Student entered the IDOC at the age of 19 as a student with a disability who had previously received specialized instruction as detailed in his last IEP.[98] The unique circumstances of implementing specialized programming for incarcerated individuals in an adult prison must be connected to and in consideration of the prison system's legitimate penological interests related to safety. When an incarcerated student presents a "bona fide security or compelling penological interest" that stands in the way of him receiving a regular high school diploma, the IEP team need not put him on track toward earning a regular diploma. Instead, the team may incorporate the services the student needs to earn a GED diploma.[99] No evidence submitted indicated that the Student in this case represented any security risk or other "bona fide penological interest." The 2nd Circuit ruled that any responsible public agency generally must convene an IEP meeting to develop an IEP at the beginning of the period of detention.[100] The IDEA requires that states provide a student with a disability who reaches the age of majority under state law that applies to all children "all rights accorded to parents under Part B of the Act transfer to children who are incarcerated in an adult or juvenile, State or local correctional institution."[101] Additionally, the IDEA requires that whenever a state provides for the transfer of rights under this part, "the agency must notify the child and the parents of the transfer of rights.[102] The Illinois Department of Corrections and the Illinois Department of Juvenile Justice School District #428 failed to meet all of the standards identified herein.[103] Further, under the IDEA's child find mandate, a district has an affirmative duty to identify, locate, and evaluate all students with disabilities who need or may need special education and related services.[104] The IDOC and ILDJJ #428 failed to meet this child find obligation.[105] The preponderance of the evidence supports that the IDOC and the ILDJJ #429 failed to meet both prongs of the *Rowley* standard, and failed to meet the

[97] *See, e.g., In re: Student with a Disability*, 120 LRP 19810 (SEA DE 05/29/20) (finding that the responsible agency should have asked the state ED to review IEP records instead of relying on notations about special education services in Delaware's Student Identification System).
[98] *See* Stipulated facts 26-28.
[99] *See Buckley v. State Corr Inst Pine Grove* 65 IDELR 127 (M.D. PA 2015) and 34 C.F.R. §300.324 (d) (2) (i).
[100] *See State of Connecticut, Unified Sch. Dist. 1 v. Department of Educ*., 24 IDELR 685 (Conn. Super. Ct. 1996)
[101] *See* 34 CFR §300.520 (a)(2)
[102] *See* 34 CFR §300.520 (a)(3),
[103] *See* Stipulation of Facts 6, 19, 20 21, and the IHO's FOF 5, 6, 7, 8.
[104] *See* 34 CFR 300.111 (a)(1)(i).
[105] *See* Stipulated facts 19-21 and the IHO's FOF 5, 6, and 7.

requirements of *Endrew F.*, that indicated school districts must provide specialized programs and services that enable the student to make meaningful progress that is "appropriately ambitious" and "in light of the student's unique circumstances." The IHO rules that the preponderance of the evidence favors the Student and the IHO rules in favor of the Student on Issue #1.

2. Issue two alleged that the IDOC and ILDJJ #428 failed to provide the Student with a high school program housed in the IDOC with the Student's non-disabled peers. Issue two is a Least Restrictive Environment (LRE) issue. The LRE mandate demands that students be educated in regular classroom settings to the maximum extent appropriate. The IDEA requires each public agency to ensure that:

    a) To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are nondisabled; and
    b) Special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only if the nature or severity of the disability is such that education in regular classes, with the use of supplementary aids and services, cannot be achieved satisfactorily.[106]

Illinois statutes require the ILDJJ #428 to take responsibility for the education of all students in the IDOC who are 21 years of age or younger.[107] ILDJJ #428 operates a year-round high school program utilizing a blended approach of online instruction utilizing the online platform known as Pearson Connexus combined with 1.5 days of face to face instruction.[108] ILDJJ #428 employs licensed teachers and licensed special education teachers and incarcerated students who participate can earn a high school diploma upon completing 16.75 credits.[109] IDOC provides incarcerated individuals with an educational placement test known as the Test of Adult Basic Education (TABE) for the purpose of educational placement and, on a limited basis, basic reading, math and life skills instruction.  IDOC also offers on a limited basis pre-GED

[106] *See* 34 CFR 300.114 (a)
[107] *See* Stipulated Facts (1-4).
[108] *See* Stipulated Facts (7-11)
[109] *See* Stipulated Facts (7 & 10).

class, college degree programs and a range of mental health services.[110] To qualify for access to either limited educational offering, incarcerated individuals must have either a GED or high school diploma. The IDOC scheduled the Student to take the TABE placement exam and failed to reschedule as required when the Student had a court appearance conflict.[111] The IDOC and the ILDJJ #428 failed to provide the Student with any of these services.[112] The failure to reschedule the TABE testing for the Student amounted to a mistake on the part of the IDOC.[113] By failing to allow the Student to complete the TABE testing, the IDOC and the ILDJJ #428 failed to obtain information that in all likelihood would have indicated the Student's level of achievement, and therefore, generated a need for further assessment as required by the IDEA and Illinois rules and regulations. The LRE mandate requires that the first consideration "must be given to placement in a regular classroom with any necessary supplemental aids and services to make that placement successful before considering more restrictive placement options.[114] The Student entered IDOC with an existing IEP that called for specialized instruction in reading, math and written expression, counseling services and several accommodations and modifications and an eligibility finding of other health impaired (OHI) due to attention deficit hyperactivity disorder (ADHD).[115] The Student's last IEP recommended a placement in a therapeutic day school.[116] The IHO concurs with the Student's arguments that stated that the IDEA, Illinois laws, and the court in the Northern District of Illinois have all affirmed that the IDEA applies to incarcerated students.[117] Further, OSEP has indicated that incarcerated students are entitled to a FAPE and 'every agency at any level of government involved in the provision of special education and related services' "are responsible for ensuring that eligible incarcerated students are able to access a FAPE 'even if other agencies share that responsibility.'[118] The IDEA explicitly requires school districts to provide special education supports and related services that will allow a student with disabilities to "be involved in and make progress in the general

[110] *See* Stipulated Facts (5) & (14-17).
[111] *See* IHO FOF (6) and testimony of Assistant Superintendent.
[112] *See* Stipulated Fact (19-21).
[113] *See* IHO FOF (6).
[114] *See* 34 C.F.R. §300.114(a) and OSEP Memorandum 95-9 21 IDELR 1152 (OSEP 1994).
[115] *See* IHO's FOF (1-3).
[116] *See* Stipulation of Fact (26)
[117] *See* IHO Exhibit (97)p. 323.
[118] *Id.* At p. 324.

education."[119] The IDEA further requires that those services "prepare them for further education, employment, and independent living."[120] Courts in other jurisdictions have ruled that students with disabilities who have not yet earned a high school diploma are still entitled to special education programs and services that enable the student to work towards a high school diploma even if the student already earned a GED.[121] The IHO also found persuasive the ruling in New Mexico, whereby a state complaint ruled that the department of corrections violated the IDEA by not allowing incarcerated students with disabilities to work toward their high school diploma as stated in the student's IEPs.[122] The IDOC and the ILDJJ #428 failed to meet the standards identified herein and the preponderance of the evidence favors the Student.[123] The IHO rules in favor of the Student on Issue 2.

3. With respect to any award of compensatory education, the Seventh Circuit has confirmed the ability of courts and hearing officers to grant compensatory education as part of its broad remedial authority. [124] To date, the Seventh Circuit has not adopted a specific rule for calculating compensatory services awards. Other courts in Illinois have relied on a flexible approach for determining the award of compensatory services adopted by other federal circuit courts.[125]The court in *Petrina W.* explicitly did not accept the day-by-day approach to compensatory education "because a flexible, individualized approach is more consonant with the aim of IDEA." When determining the compensatory education order, the IHO followed these principles and the approach dictated by the qualitative approach for determining compensatory education.

**<u>ORDER</u>**

Based upon the Findings of Fact and Conclusions of Law, the IHO rules for the Student

---

[119] *Id.* At p. 327.
[120] *Id.*
[121] *See M. W. v. Sparta Township BOE No. 21,* 19977, 2002 WL 1093667 at *4-5 (D.N.J. April 12, 2022).
[122] *See* IHO Exhibit (97) at p. 377.
[123] *See* Stipulations of Fact (4), (6), (21), (22-23) and the IHO's FOF (1-4), (7-9), (11) and (12).
[124] *See Bd. of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Illinois State Bd. of Educ*., 79 F.3d 654 (7th Cir. 1996)).)).
[125] *See Petrina W. v. City of Chicago Pub. Sch. Dist. 299*, 2009 WL 5066651 at *4 (N.D. Ill. Dec. 10, 2009) (citing *Reid v. D.C.*, 401 F.3d 516, 523 (D.C. Cir. 2005), *Parents of Student W. v. Puyallup Sch. Dist. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994), *Bd. of Educ. of Fayette County, Ky. v. L.M.*, 478 F.3d 307, 316 (6th Cir. 2007), and *Draper v. Atlanta Indep. Sch. Sys.,* 518 F.3d 1275, 1290 (11th Cir. 2008)).

Consistent with the IEE providers' recommendations for the Student, the IHO orders the Illinois Department of Corrections and the Illinois Department of Juvenile Justice to provide the Student with the following relief:

1. ORDERED: that no later than June 14, 2024, convene an IEP team meeting and develop an IEP that includes the following:[126]
   a. Incorporation and use of speech-to-print curriculum known as SPELL-LINKS™ implemented by an LBS 1 special education teacher certified in the software program for at least one hour each school day.
   b. Implement for the Student the *Writing our World* program to address the Student's specific learning disability in written expression implemented by an LBS 1 special education teacher trained to use the program for at least one hour each school day.
   c. Implement the *Chris Woodin Math* program to address the Student's math deficits as identified in the IEE completed by Dr. Sonia Cooper and implemented by an LBS 1 special education teacher trained to utilize the software for at least one hour each school day.
   d. The implementation of assistive technology instruction to assist the Student's learning and recoupment of skills lost. The IEP team may select the most appropriate software program from the following: Learning Ally, Bookshare, Co:Writer, or Kami. The selected program must be implemented by an assistive technology expert for at least one hour each school day.
   e. Appropriate goals, modifications, and accommodations to support the Student's learning.
   f. 60 minutes per week of speech and language services consistent with the identified needs contained within the IEE completed for the Student on April 17, 2024.[127]
   g. The 60 weekly minutes must be delivered via 30 minutes each week of individual speech and language therapy and 30 minutes per week of group

[126] *See* IHO FOF (11).

[127] Note: The District objected to any consideration of speech and language services for the Student alleging that the complaint did not include a request for speech and language services. The Student's proposed relief in the issues and relief certified by both parties during the PHC included language that reflected: "Provide the Student with an IEP that includes the recommendations of the IEE completed by Dr. Sonia Cooper and ***other IEE providers*** (emphasis added). The IEE completed by Dr. Cooper identified the need for a speech and language evaluation due to an indication of language disorder. Other IEEs included a complete speech and language evaluation. On this basis, the IHO overruled the District's objection to the inclusion of any speech and language services.

therapy services.

h. All services must be delivered by a certified speech and language pathologist.

2. IT IS FURTHER ORDERED: In an effort to compensate the Student for the lack of services since the Student's February 2, 2022 incarceration,[128] the IDOC and the ILDJJ #428 must provide the Student with the following compensatory education services by the first day of school in the fall of 2024 as identified by the ILDJJ #428 school calendar:
   a. Provide the necessary courses for a credit-bearing high school curriculum required to earn 13 additional credits the Student needs to earn a high school diploma.[129]
   b. Provide the Student with 30 minutes per week of individual social work services until the Student completes the required 13 additional credits to earn a high school diploma.
3. IT IS FURTHER ORDERED that no later than August 1, 2024, reimburse Equip for Equality for the expense of the following IEEs and Report:
   a. The IEE completed by the Student's neuropsychologist in the amount of $6,500.00.
   b. The IEE completed by Student's speech and language provider in the amount of $2,562.50.
   c. The report completed by the Student's expert in the amount of $3,150.00.

By: /s/*D. Michael Risen*

Impartial Hearing Officer
222 E Surrey Lane, East Peoria, IL 61611
309-202-4654 phone
309-694-2295 fax

[128] From the Student's incarceration date to the approximate start of the 2024-2025 ILDJJ #428 school year, the Student was deprived of services for approximately 31 months. Illinois law provides the Student with an additional 12 months of eligibility as the Student's 22nd birthday occurs during the start of the 2024-25 school year. Thus, the Student maintains a total of 43 months of eligibility for special education programming and services. Considering the Student's identified disabilities, and provided the Student provides the attention and effort towards course completion, to compensate the Student for the 31 months the IDOC and ILDJJ #428 deprived the Student of a FAPE, the high school curriculum must be provided to the Student until the Student earns the remaining 13 credits required for graduation or until the Student fails to meet the course standards in two or more courses.

[129] Note: The ILDJJ #428 indicated that a pilot program is set to begin in June of 2024. The stipulated pilot program provides incarcerated individuals who participate and complete the program the opportunity to earn a high school diploma at Three Rivers Correctional Institution. The IDOC may transfer the Student to the Three Rivers facility to comply with this order by enabling the Student to participate in the pilot program. Should the IDOC determine that the transfer to Three Rivers is appropriate, then the creation of a separate high school program at the Student's current facility would not be required. However, the IEP team is still required to make the determination as to the appropriate incorporation of the programs identified as *Spell-Links, Writing Our World,* and *Chris Woodin Math* into the Three Rivers pilot program.

## NOTICE OF RIGHT TO REQUEST CLARIFICATION

Pursuant to 105 ILCS 5/14-8.02a(h) either party may request clarification of this decision by submitting a written request to the Hearing Officer within five (5) days of receipt of the decision. The request for clarification shall specify the portions of the decision for which clarification is sought. A copy of the request shall be mailed to all other parties and the Illinois State Board of Education, Program Compliance Division, 100 North First Street, Springfield, IL 62777. The right to request clarification does not permit a party to request reconsideration of the decision itself and the Hearing Officer is not authorized to entertain a request for reconsideration.

## NOTICE OF RIGHT TO APPEAL

This is the final administrative decision in this matter. Pursuant to 105 ILCS 5/14-8.02a(i), any party aggrieved by this Hearing Officer Determination may bring a civil action in any state court of competent jurisdiction or in a District Court of the United States without regard to the amount in controversy within one hundred and twenty (120) days from the date the decision is emailed to the party.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the undersigned sent a true and correct copy of the Final Determination and Order via electronic mail as an attached PDF file, electronic mail only, and directed to:

Ms. Stephanie Jones, Esq.
Kriha Boucek
2 Transam Plaza, Suite 450
Oakbrook Terrace, Il 60181
@: stephanie@krihaboucek.com

And

Ms. Jessica Range, Esq.
Ms. Olga Pribyl, Esq.
Ms. Cristina Kinsella, Esq.
Equip for Equality
20 N. Michigan Ave, Suite 300
Chicago, Il 60602
@: JessicaR@equipforequality.org
@: olga@equipforequality.org
@: Cristinak@equipforequality.org

And

Mr. Andrew Eulass, Esq., Due Process Coordinator
@: aeulass@isbe.net

On May 18, 2024

/s/*D. Michael Risen*

D. MICHAEL RISEN, PH.D.
IMPARTIAL HEARING OFFICER
DMR EDUCATIONAL CONSULTING
222 E. SURREY LANE
EAST PEORIA, IL 61611
mikerisen@msn.com
309-694-42864 (phone)
309-694-2995 (fax)
309-202-4654 (cell)

# APPENDIX A – PERSONALLY IDENTIFIABLE INFORMATION

Antonia Monroe v. Illinois Department of Juvenile Justice #428

Case No. 2023-DP-0256

| | |
|---|---|
| Students Name | Antonia Monroe |
| Date of Birth | September 10, 2002 |
| Attending School | Currently incarcerated at Pinckneyville Correctional Center |
| Recommended School | Programs provided as described herein and provided by the ILDJJ #428 |
| IDOC Manager of Adult Education and Vocational Services | Ms. Amanda Maria Miller |
| Neuropsychologist | Dr. Sonia Cooper |
| CEO Redwood Literacy | Kaitlin Feriante |
| Assistant Superintendent for ILDJJ #428 | Dr. Bambi Bethel-Leitschuh |
| Parent's expert witness | Dr. Michael Krezmien |
| District's expert witness | Dr. John Frampton |
| Speech and language pathologist | Ms. Brittany Armstrong-Sowle |