IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTONIO MONROE,

       **Plaintiff,**

v.

BOARD OF EDUCATION OF THE
ILLINOIS DEPARTMENT OF
JUVENILE JUSTICE SCHOOL
DISTRICT #428 and ILLINOIS
DEPARTMENT OF CORRECTIONS,

       **Defendants.**

Case No. 3:24-CV-2639-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Antonio Monroe sues Defendants Board of Education of the Illinois Department of Juvenile Justice School District #428 (the "District") and Illinois Department of Corrections (IDOC) under the fee-shifting provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(i)(3)(B). (Doc. 1). The parties have now filed cross-motions for summary judgment. (Docs. 48, 50). Monroe argues that he prevailed against Defendants in an IDEA due process hearing and is therefore entitled to recover $302.050.95 in legal fees, costs, and reimbursable expenses, plus prejudgment interest and fees and costs incurred in this action. (Docs. 48–49). Defendants argue that Monroe is not a "prevailing party" and thus is entitled to no recovery; but if he is a prevailing party, they argue that his fee award should not exceed $32,482.38. (Docs. 50–

Page 1 of 20

51). For the reasons explained below, the Court denies Defendants' motion for summary judgment; Monroe's motion is granted in part and denied in part.[1]

### BACKGROUND[2]

Antonio Monroe has qualified for special education services since 2011. (Doc. 47, ¶ 9). That status did not change when, in February 2022, he was imprisoned in an IDOC facility. *Id.* ¶¶ 2–5, 11. Indeed, until the end of the school year during which Monroe turned 22, the District was responsible for providing him with an education. *Id.* ¶¶ 5, 11.

While in IDOC custody, however, Monroe filed a "due process complaint" against Defendants, arguing they had failed to provide him with the special education services to which he was entitled under the IDEA. *See id.* ¶¶ 3, 12. Monroe asked the Impartial Hearing Officer (IHO) assigned to his case to award "systemic relief," i.e., to grant relief both to Monroe and to similarly situated individuals. *Id.* ¶ 13. The IHO determined he did not have jurisdiction to award systemic relief and only allowed the action to proceed on claims specific to Monroe. (Doc. 47-1, at 9–14; Doc. 47, ¶ 15). Monroe is now pursuing the systemic claims in *Hebert v. Illinois Department of Corrections*, No. 24 C 7950, a putative class action in the Northern District of Illinois. (Doc. 47, ¶ 20).

---

[1] Also pending before the Court are two motions: Defendants' amended motion for leave to file a response to Monroe's statement of material facts (Doc. 57) and Monroe's motion for leave to file additional authority (Doc. 61). First, Defendants' amended motion is granted, and the Court considers the response (Doc. 57-1) to have been timely filed. Although Defendants indicated Monroe would oppose the motion (Doc. 57, ¶ 10), Monroe neither filed a response in opposition nor addressed the request in his after-filed reply (Doc. 58). Second, Monroe seeks to submit evidence going to the reasonableness of his counsel's hourly rates. (Doc. 61). This request is opposed by Defendants. (Doc. 63). The evidence Monroe seeks to submit was not available at the time the cross-motions were filed. But because (as explained below) the parties' original filings establish a genuine dispute of material fact, summary judgment for either party is precluded. *See* FED. R. CIV. P. 56(a). Additional evidence cannot eliminate the factual dispute. Accordingly, Monroe's motion is denied as moot.

[2] All facts in this section are undisputed unless otherwise noted.

The IHO went on to rule in favor of Monroe on two claims. *Id.* ¶ 17. Specifically, the IHO ruled that Defendants had failed to provide Monroe with (1) an individualized education program (IEP), IEP goals with accommodations and modifications, or a triennial reevaluation; and (2) a high school program housed in the IDOC with his non-disabled peers. (*See* Doc. 47-1, at 15; Doc. 47, ¶¶ 12, 17). Monroe's counsel submitted to Defendants a claim for attorneys' fees and costs associated with the administrative action, (Doc. 47, ¶ 21), but Defendants dispute that Monroe is entitled to reimbursement (*e.g.*, Doc. 57-1, ¶ 1). Monroe thus began this action, seeking an award of attorneys' fees under 20 U.S.C. § 1415(i)(3)(B). (*E.g.*, Doc. 1).

The parties have filed and fully briefed cross-motions for summary judgment. (Docs. 46–59). As mentioned above, they dispute whether Monroe is a "prevailing party" within the meaning of the IDEA, whether Monroe actually prevailed before the IHO, and the amount of fees to be awarded (if any). In calculating that amount, the parties dispute what constitutes a reasonable hourly rate, whether the hours billed by Monroe's attorneys were reasonably expended, and whether the total reached by multiplying the reasonable hours by the reasonable rate should be reduced based on the factors set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

### LEGAL STANDARDS

Summary judgment is proper only if the moving party can demonstrate, through pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). "A genuine dispute over a material fact exists if 'the evidence is such that a reasonable jury could return a verdict' for the nonmovant." *Machicote v. Roethlisberger*, 969 F.3d 822, 827 (7th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if it might affect the outcome of a suit under the relevant substantive law. *Ruffin-Thompkins*, 422 F.3d at 607.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, the Court "set[s] forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). But "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014).

The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160–61 (1970); *see also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). Once the moving party sets forth the basis for summary judgment, the burden shifts to the nonmoving party, who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp.*, 477 U.S. at 322–24.

<u>DISCUSSION</u>

The IDEA is meant "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d), (d)(1)(A). To enforce that guarantee, the IDEA permits parents[3] to request an impartial due process hearing before a state educational agency. *See Judah M. v. Bd. of Educ. of Chi., Dist. 299*, 798 F. Supp. 2d 942, 947 (N.D. Ill. 2011). The victor in those administrative proceedings is sometimes eligible for an award of reasonable attorneys' fees. 20 U.S.C. § 1415(i)(3)(B)(i)(I)–(III). "In general, courts apply the same principles applicable to attorney's fees awards for civil rights cases under 42 U.S.C. § 1988 to cases brought under the IDEA." *Judah M.*, 798 F. Supp. 2d at 947 (citing *Jodlowski v. Valley View Cmty. Unit Sch. Dist. No. 365-U*, 109 F.3d 1250, 1253 n.2 (7th Cir. 1997)).

To secure an award of attorneys' fees, Monroe must first demonstrate he is a "prevailing party" within the meaning of the IDEA. *Id.* (citing *Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 709 (7th Cir. 2005)). Next, the Court asks whether the claimed fees are "reasonable" under the circumstances. *Id.* This analysis proceeds in two steps: first, the Court determines the "lodestar figure," which is the reasonable hourly rate multiplied by the number of hours reasonably expended on the litigation. *Id.* (citing *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009)). Second, that lodestar figure may then be adjusted based on the factors set forth in *Hensley*. *Judah M.*, 798 F. Supp. 2d at 947; *Enoch*, 570 F.3d at 823.

---

[3] Or, in some situations (as here), the student themselves. *See, e.g., J.S. v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 76 F.4th 32 (2d Cir. 2023).

As explained below, the Court grants summary judgment to Monroe (and denies it to Defendants) on the legal question of whether Monroe is a prevailing party. But because genuine disputes of material fact remain, the Court cannot grant judgment as a matter of law to either party on the question of whether the claimed fees are reasonable under the circumstances.

### A.  Prevailing Party

The Court must first determine whether Monroe was the prevailing party in the underlying administrative due process case. *E.g.*, *Judah M.*, 798 F. Supp. 2d at 947 (citing *Linda T.*, 417 F.3d at 709). A party has prevailed "if he obtains at least some relief on the merits of his claim such as an enforceable judgment, consent decree, or settlement." *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 805 (7th Cir. 2004) (quoting *Bd. of Educ. of Oak Park Dist. 200 v. Nathan R.*, 199 F.3d 377, 382 (7th Cir. 2000)). If Monroe satisfies this standard, he is eligible to recover reasonable attorneys' fees. 20 U.S.C. § 1415(i)(3)(B)(i).

Monroe asserts he "unquestionably" prevailed, as the IHO ruled in his favor on both issues. (Doc. 49, at 4). By all appearances, that should settle the matter—especially as "the 'prevailing party inquiry does not turn on the magnitude of the relief obtained.'" *Evanston Cmty. Consol.*, 356 F.3d at 805 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

But Defendants resist this conclusion. First, they invoke judicial estoppel by pointing to Monroe's representations in a filing in *Hebert*. (Doc. 51, at 5–8). In that still-pending action, the plaintiffs opposed a motion to dismiss by arguing, *inter alia*, that administrative exhaustion would be futile. Plaintiffs' Opposition to Defendants' Motion

to Dismiss at 8, *Hebert v. Ill. Dep't of Corr.*, No. 24 C 7950 (N.D. Ill. Dec. 23, 2025), Dkt. No. 159, 2025 U.S. Dist. Ct. Motions LEXIS 19885.[4] They argued Monroe's administrative victory had been "wholly ineffective," as Defendants had yet to comply with IHO's order. *Id.* Accordingly, Monroe had received "relief-in-name-only" such that exhaustion for the other plaintiffs would be futile as a practical matter. *Id.* Defendants seize on this verbiage, describing Monroe as a "chameleonic litigant" who is engaged in "blatant self-contradiction" in search of "multiple recoveries." (Doc. 51, at 6). The Court, they urge, must use judicial estoppel to prevent Monroe from prevailing on two inconsistent positions.

Second, Defendants argue Monroe is not a "prevailing party" within the meaning of the IDEA because he brought the action on his own behalf as an adult student. *Id.* at 8. Thus, under the statute's "plain language," *id.*, he is excluded from the statutory fee-shifting provision, which permits "the parent of a child with a disability" to recover fees as a prevailing party but is silent on fee awards to a child with a disability himself, 20 U.S.C. § 1415(i)(3)(B)(i)(I).

The Court is unconvinced. As Monroe points out (Doc. 53, at 1–2), Defendants made contrary admissions in their answer to Monroe's complaint:

> Defendants admit Plaintiff requested a due process hearing and received substantial relief in those proceedings. Defendants further admit Plaintiff is entitled to attorneys' fees and costs, but Defendants deny Plaintiff is entitled to the amount of attorneys' fees and costs described in this Complaint. . . . Defendants admit Plaintiff seeks attorneys' fees and costs related to his individual claims upon which he prevailed and for which there is no further right to appeal by Defendants. . . . Defendants admit the

---

[4] Hereinafter referred to as "Plaintiffs' Opposition."

IHO ruled in favor of Plaintiff on both issues Plaintiff raised in his due process request.

(Doc. 9, ¶¶ 1, 5, 13). In fact, they specifically admitted Monroe's allegation that "[a]s the prevailing party, Plaintiff is entitled to reasonable attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B)." *Id.* ¶ 19. This constitutes a judicial admission that Monroe is a prevailing party under the IDEA, which has the same effect as a waiver: it "remov[es] that factual issue from the case." *Nw. Mut. Life. Ins. Co. v. Przewozniak*, 659 F. Supp. 3d 919, 929–30 (N.D. Ill. 2023) (first citing *Pressure Specialist, Inc. v. Next Gen Mfg., Inc.*, No. 18 C 7013, 2022 WL 356842, at *2 (N.D. Ill. Feb. 6, 2022); then citing *Soo Line R.R. Co. v. St. Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997); and then citing *Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996)); *see also Smith v. SMS Grp., Inc.*, No. 22-cv-1303, 2023 WL 7089844, at *3 (S.D. Ill. Oct. 26, 2023) ("That which a defendant admits in his answer is binding upon him until he withdraws the admission by a proper amended or supplemental pleading." (quoting *Freedom Nat. Bank v. N. Ill. Corp.*, 202 F.2d 601, 605 (7th Cir. 1953))).

Under the well-settled rule that parties are bound by what they state in their pleadings, Defendants may not "controvert what [they have] already unequivocally told" the Court "by the most formal and considered means possible." *Soo Line*, 125 F.3d at 483. In other words, Defendants have conceded that Monroe is a prevailing party entitled to

fees;[5] as such, the Court grants summary judgment to Monroe and denies it to Defendants on this first question.

## B. Reasonableness of the Fee Award

Because Monroe has demonstrated he is the "prevailing party," he is entitled to reasonable fees. As explained above, whether claimed fees are reasonable is determined by a two-step process: first, the Court multiplies the reasonable number of hours expended by a reasonable hourly rate to produce the lodestar figure. Then that amount is adjusted based on the *Hensley* factors.[6] The resulting amount is the reasonable fee award.

In this case, the lodestar figure cannot be calculated (and, therefore, neither can the subsequent adjustments to that figure). There remain genuine disputes of material fact as to both the reasonable hourly rate and the number of hours reasonably expended.

---

[5] The Court briefly adds that, even if Defendants had not made this binding concession, their arguments would not have availed them. Assuming *arguendo* that Monroe's position in *Hebert* is inconsistent with his position here (which is far from obvious, *see infra* Section B.iii), judicial estoppel applies only when a party takes a position inconsistent with one underlying a prior *judgment*. *Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1547–48 (7th Cir. 1990) ("The offense is not taking inconsistent positions so much as it is *winning,* twice, on the basis of incompatible positions." (citations omitted)); *CSI Worldwide, LLC v. TRUMPF Inc.*, 944 F.3d 661, 662–63 (7th Cir. 2019) (citations omitted). As *Hebert* is still pending, judicial estoppel definitionally cannot apply. Nor does the Court buy Defendants' statutory argument. While the Seventh Circuit has not decided whether an adult student litigating on his own behalf can recover fees under the IDEA, the Court is persuaded by the thoughtful analysis of the Second Circuit in *J.S. v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 76 F.4th 32, 38–47 (2d Cir. 2023). The *J.S.* Court concluded that a child with a disability who sues on his or her own behalf and prevails may recover attorneys' fees after carefully considering the statute's text, structure, and legislative history, as well as instructive Supreme Court precedent. *Id.* The Second Circuit's analysis persuades this Court that, even in the absence of Defendants' admission, Monroe would have been eligible to recover attorneys' fees under 20 U.S.C. § 1415(i)(3)(B)(i)(I).

[6] In calculating fee awards under the IDEA, additional reductions to the lodestar may be warranted based on the factors set forth in 20 U.S.C. § 1415(i)(3)(F). For instance, the amount must be reduced if the Court finds that "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." *Id.* § 1415(i)(3)(F)(iii).

Because this action is before the Court on summary judgment, the Court cannot resolve these factual disputes and must deny both motions.

i.    *Reasonable hourly rate*

The reasonable hourly rate is "'derived from the market rate for the services rendered.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). An attorney's "actual billing rate for similar litigation" is presumptively appropriate for use as the market rate. *Id.* (citing *Denius*, 330 F.3d at 930). But for attorneys who use contingent fee arrangements or who work in public interest litigation, "the 'next best evidence' of an attorney's market rate" is "'evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases,'" with a preference for "third party affidavits that attest to the billing rates of comparable attorneys." *Id.* (quoting *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir. 1999)) (first citing *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996); and then citing *Spegon*, 175 F.3d at 556).

Monroe, who bears the burden of production on establishing the market rate, *id.* (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)), proposes rates of $325 to $550 per hour, based on the experience level of each of his attorneys. (Doc. 46, ¶¶ 3–9). In support, he has submitted sworn declarations in which each attorney attests to their level of experience and that the requested rate is their standard billing rate. (Docs. 46-1 to 46-7). Monroe further provides third-party affidavits from plaintiffs' attorneys who specialize in special education law and have comparable experience to his own counsel. Each avers

Page 10 of 20

that his or her billing rates are similar to or higher than those of Monroe's counsel. (Docs. 1-6, at 7–24). At first glance, this seems like exactly the sort of evidence required to satisfy Monroe's burden. *See Pickett*, 664 F.3d at 640.

In response, however, Defendants point out that the relevant rate is not the one charged by an attorney, but the rate that is actually paid. (*E.g.*, Doc. 51, at 10–11 (first citing *Montanez v. Chi. Police Officers Fico (Star # 6284), Simon (Star # 16497)*, 931 F. Supp. 2d 869, 874 (N.D. Ill. 2013); and then citing *People Who Care*, 90 F.3d at 1310)). They correctly note that none of Monroe's evidence confirms that his attorneys or the similar attorneys collect fees at the listed rates; only that they charge fees at those rates. *Id.* Defendants then offer contrary evidence of the rates of their own counsel (Doc. 52-1, at –68) and a declaration from an attorney at their counsel's firm, *id.* at 69–71. This attorney opines that the true market rate is $250 to $315 per hour, depending on the attorney's experience. *Id.* at 70.

On summary judgment, the Court cannot weigh the evidence; it can only determine whether material facts are disputed. The procedural posture distinguishes this case from fee-award determinations in other contexts. Unlike fee awards under 42 U.S.C. § 1988—which are decided by the same court that has just resolved the litigation on the merits—this case involves a standalone fee request based on prevailing on the merits in an unrelated proceeding before a different tribunal. In the § 1988 context, a district court "has the authority to make its own determination of a reasonable rate" if "a fee applicant does not satisfy its burden" of production. *Pickett*, 664 F.3d at 640; *see also id.* at 639 & n.1 (explaining that fee awards under Title VII are governed by the same rules as fee awards

under § 1988). Here, however, neither party has directed the Court's attention to any authority granting it the power to go beyond the evidence in the record or make credibility determinations. The Court therefore assumes it has only its typical authority under Rule 56 of the Federal Rules of Civil Procedure; accordingly, it cannot resolve the question of market rates based on the evidence before it.

Here, the fact of the market rate—necessary to determine whether the claimed rate is reasonable—is disputed. Monroe bears the burden of production on establishing the market rate by proof of rates actually charged to paying clients. While he has provided declarations and affidavits establishing the billing rates *charged* by his attorneys and attorneys of comparable experience, those declarations and affidavits do not disclose whether those are the rates actually *received* from paying clients. From their silence, it could be reasonably inferred that these are not the rates his attorneys (or their comparators) are actually *paid*. Thus, in the light most favorable to Defendants, it appears Monroe failed to carry his burden; as such, he is not entitled to summary judgment on the question of the reasonable hourly rate.

But Defendants are not entitled to summary judgment, either. Viewed in the light most favorable to Monroe, his evidence *could* be evidence of the rates actually paid; the declarations and affidavits are consistent with either conclusion. Moreover, even if Defendants are correct that Monroe has provided no evidence of what clients actually pay, they still would not be entitled to judgment as a matter of law. This is because proof of the market rate is not "an essential element of [Monroe's] case with respect to which [he] has the burden of proof." *Celotex Corp.*, 477 U.S. at 323. Even though the fee applicant

Page 12 of 20

bears the burden of production on this question, a failure to produce evidence of the market rate does not doom a fee request: instead, the Court determines the reasonable rate itself. *Pickett*, 664 F.3d at 640. It is therefore not an essential element.

Both parties have submitted evidence on the market rate for comparable legal services, rendering it a disputed question of fact. Neither party has established their entitlement to judgment as a matter of law. Therefore, the Court denies both motions for summary judgment as to the question of whether the claimed hourly rates are reasonable.

### ii.   *Number of hours reasonably expended*

Similarly, the Court cannot determine as a matter of law the number of hours reasonably expended. Though much ink has been spilled on this question (Doc. 49, at 10–14; Doc. 51, at 9–10; Doc. 53, at 12–13; Doc. 55, at 7–9; Doc. 58, at 4–5; Doc. 59, at 6), each side appears to have proceeded from a mistaken premise: that Monroe's failure to prevail on his systemic claims before the IHO must be taken into account as an adjustment *after* the computation of the lodestar figure. But, under *Hensley*, the hours spent on the systemic claims are not compensable *at all*—they must be subtracted *before* the lodestar is computed. Because of this misunderstanding, no party has demonstrated its entitlement to judgment as a matter of law.

Proceeding from the assumption that the degree of success should be factored in as an adjustment to the lodestar figure, Defendants argue that Monroe's fee award should be reduced to reflect his failure to succeed.[7] (Doc. 51, at 7–8; Doc. 55, at 2–3; Doc. 59, at 2–

---

[7] Defendants argue that Monroe should be considered to have only partially succeeded based on two rationales: first, that Monroe represented in *Hebert* that he achieved relief in name only from the IHO; and

3; *see also* Doc. 51, at 17 (advocating for a 50% reduction for a lack of success); Doc. 55, at 8 (arguing that a "general percentage reduction" of the fee award is permissible to reflect a lack of success)). They further assert that Monroe's billing entries are so vague that it cannot be determined whether each describes work on failed systemic claims or on successful individual claims. (Doc. 51, at 7–8, 17; Doc. 55, at 7–8; Doc. 59, at 6). Accordingly, Defendants seek two reductions of 50% each—or, in other words, a reduction to 25% of the lodestar figure.[8]

Monroe, on the other hand, argues that the hours claimed are all reasonable and compensable. (Doc. 49, at 10–14; Doc. 53, at 12–13; Doc. 58, at 4–5). He argues that his hours should not be reduced "due to the IHO's finding that he lacked authority to address systemic claims" and leans on the Seventh Circuit's decision in *Sherkow v. Wisconsin* for the proposition that "hours expended on unsuccessful research or litigation" are compensable "unless the positions asserted are frivolous or in bad faith." (Doc. 49, at 11–12 (quoting *Sherkow v. Wisconsin*, 630 F.2d 498, 504 (7th Cir. 1980))).

But *Sherkow* does not accurately state the law. Three years after *Sherkow* was handed down, the *Hensley* Court explicitly set out to clean up the courts of appeals' "varying standards" for cases in which the plaintiff "did not succeed on all claims

---

second, that the IHO rejected Monroe's systemic claims. As explained below, *infra* Section B.iii, the Court rejects the first rationale. But the second rationale has legs, as explained in the current section.

[8] Technically, Defendants appear to be using the *Hensley* factors not to reduce the lodestar figure but instead to reduce the number of compensable hours used to *calculate* the lodestar figure. (*See* Doc. 51, at 16–17). This is backwards: the proper procedure instead is to begin by calculating the lodestar figure. Once it is calculated, the lodestar can be reduced to reflect incomplete success, a failure to exercise billing judgment, etc. This distinction does not affect the disposition of the instant motions; the Court only mentions it in the hope that the parties' future briefing will proceed from a set of shared assumptions about the relevant legal framework.

asserted." *Hensley*, 461 U.S. at 432 & n.5 (1983). It expressly disapproved of the then-prevailing rule in the Eighth Circuit, *id.* at 438 n.14 (citing *Brown v. Bathke*, 588 F.2d 634 (8th Cir. 1978)), which was the same as the rule adopted in *Sherkow*, *see id.* at 432 n.5 (listing both *Sherkow* and *Brown* as expressing the rule that "prevailing plaintiffs generally should receive a fee based on hours spent on all nonfrivolous claims"). In other words, Monroe has stated the wrong legal rule for evaluating whether the fee award should be reduced for hours spent on unsuccessful claims.

Instead, *Hensley* explains that there are two categories of partially prevailing plaintiffs, each of which requires a different approach. *See id.* at 434–35; *Murphy v. Smith*, 864 F.3d 583, 587 (7th Cir. 2017). One category consists of cases where the claims for relief "involve a common core of facts or will be based on related legal theories," which will make it "difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. In such cases, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* Under this first approach, courts reduce the lodestar figure by a percentage amount to reflect a lack of success. *E.g.*, *Judah M.*, 798 F. Supp. 2d at 951–53. As far as the Court can discern, this is the approach each party assumed should be taken in this case. (*See, e.g.*, Doc. 49, at 11 ("Plaintiff's attorneys' fees should not be reduced due to the IHO's finding that he lacked authority to address systemic claims, *when compared to the overall relief and substantial results achieved by the hearing*." (emphasis added)); Doc. 51, at 17 (advocating percentage reduction for lack of success). *But see* Doc. 51, at 6–7 (arguing that the hours spent on the systemic claims are not legally compensable under *Hensley*)).

In the second category of cases, a plaintiff's lawsuit raises "distinctly different claims for relief that are based on different facts and legal theories," such that "even where the claims are brought against the same defendants . . . counsel's work on one claim will be unrelated to his work on another." *Hensley*, 461 U.S. at 434–35; *accord Murphy*, 864 F.3d at 587. When a case falls in this category, "work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Hensley*, 461 U.S. at 435 (quoting *Davis v. County of Los Angeles*, No. 73-63, 1974 WL 180, at *3 (C.D. Cal. June 5, 1974)). The district court is then "require[d]" to treat the unrelated claims "as if they had been raised in separate lawsuits" and to award no fee "for services on the unsuccessful claim." *Id.*

This case belongs to the second category. The systemic claims perforce involved different questions of law (whether the IHO has jurisdiction to consider requests for class-wide relief) and different questions of fact (whether students *other than Monroe* were experiencing violations of their educational rights). (*See, e.g.*, Doc. 47-1, at 10 (listing Monroe's seven initial claims)). So this Court's role in evaluating Monroe's degree of success is not, as much of the briefing assumes, a question of the ratio between the relief sought and the relief obtained. *Hensley*, 461 U.S. at 434–36. Instead, "[t]he congressional intent to limit awards to prevailing parties *requires*" that "no fee may be awarded for services on the unsuccessful claim[s]." *Id.* at 435 (emphasis added).

Because this Court is required to deny Monroe's fee request to the extent it seeks reimbursement for services on the systemic claims, another of Defendant's objections is salient: that the billing entries recorded by Monroe's counsel are vague. (Doc. 51, at 12–

14). Defendants argue that endemic vagueness in the billing entries merits a percentage reduction. (Doc. 51, at 17). This reduction is supposed to be performed on an already-calculated lodestar figure. *See, e.g.*, *Judah M.*, 798 F. Supp. 2d at 947, 951–53. But, under the approach dictated by *Hensley*, vagueness in Monroe's billing entries would make it impossible to determine which hours were expended on which claims, thus preventing a calculation of the lodestar figure *in the first place*. In other words, time spent on the systemic claims dismissed by the IHO cannot be counted in the lodestar figure; to the extent that some of the entries are too "vague" to ascertain their subject matter, Monroe will have failed to carry his burden.

The parties do not identify for the Court any accounting of which billing entries pertain to which claims. Instead, the briefing focuses on whether a percentage reduction is warranted. But the law requires the Court to specifically exclude the entries related to unsuccessful claims; without having briefed the question under the correct legal framework, neither party has made a sufficient showing to justify judgment as a matter of law. The number of hours that were spent on Monroe's individual claims (as opposed to the systemic claims) is a material fact that remains genuinely disputed. Accordingly, both motions are denied as to the number of hours reasonably expended.

   *iii.*   *Adjustments*

As discussed above, the Court is supposed to apply the *Hensley* factors after the lodestar figure is computed. But without knowing the lodestar figure, the Court cannot address *adjustments* to the lodestar figure. Accordingly, the Court denies both motions for summary judgment as to the *Hensley* factors.

Before concluding, however, the Court will address and reject an argument raised repeatedly by Defendants. Specifically, Defendants point to Monroe's "admission" in *Hebert* (the putative class action addressing Monroe's systemic claims) that the relief he received from the IHO was wholly ineffective. (Doc. 51, at 5–8, 16; Doc. 55, at 2–3; Doc. 59, at 2–3). As Monroe ostensibly admitted, they argue, he did not fully succeed; therefore, his award should be reduced accordingly.[9]

But Defendants mischaracterize Monroe's representation in *Hebert*. It is *not* an "admission" that the IHO failed to order adequate relief on his claims. *See* Plaintiffs' Opposition, *supra* note 4, at 7–9. Rather, it is an argument that despite Monroe's success and the IHO's order, he has not received relief because *Defendants have failed to comply*. *Id.* at 8 (citing Complaint ¶ 24, *Hebert v. Ill. Dep't of Corr.*, No. 24 C 7950 (N.D. Ill. Aug. 30, 2024), Dkt. No. 1, 2024 WL 4014926, 2024 U.S. Dist. Ct. Pleadings LEXIS 492240). Defendants' argument, therefore, runs like this:

1.  Monroe sought relief on two issues: our alleged failures to provide him with (1) an IEP and related requirements, and (2) a high school program with his non-disabled peers. (*See* Doc. 47-1, at 15; Doc. 47, ¶¶ 12, 17).

2.  The IHO ruled in Monroe's favor on both issues and ordered us to perform certain actions to remedy the failures. (Doc. 47, at 17; Doc. 47-1, at 36–37).

3.  According to Monroe's representations in another case, we have not yet complied with the IHO's order. Plaintiffs' Opposition, *supra* note 4, at 8.

4.  Because of our alleged noncompliance with an administrative order, Monroe did not succeed.

---

[9] This argument is made in the alternative to the one considered and rejected above: that Monroe is judicially estopped from claiming prevailing-party status by virtue of his representations in *Hebert*.

5.  Therefore, Monroe's fee award must be reduced.

Obviously not. Taken to its conclusion, Defendants' logic would create a get-out-of-fees-free card for miserly losing parties: "Lose a civil rights case? Just ignore the injunction! 'Forget' to pay the damages award! Disobey the decree! Contempt, after all, could be cheaper than attorneys' fees."

Fortunately, that perverse logic is not the law. *See, e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 111–113 (1992) (describing the touchstone of prevailing as the issuance a judgment which "changes the legal relationship between the parties" by "entitl[ing]" it "to *enforce* a judgment" (emphasis added)); *id.* at 114–15 (framing degree of success in terms of a comparison between the judgment sought and the judgment entered, not between the judgment sought and the judgment actually *enforced*). An alleged failure by Defendants to comply with the IHO's order is not equivalent to a lack of success by Monroe; accordingly, Defendants' emphasis on Monroe's representation in *Hebert* avails them not.

To summarize: the Court cannot determine the reasonable amount of fees as a matter of law. Monroe has made a sufficient showing to preclude summary judgment against him, but Defendants have made a sufficient showing to preclude summary judgment against them. With material disputes of fact on every salient sub-question, neither party is entitled to summary judgment on the reasonableness of the fee award.

## C.  Prejudgment interest

In light of the substantial outstanding issues to be resolved in this case, the Court declines at this time to rule on Monroe's request for prejudgment interest.

<u>CONCLUSION</u>

For these reasons, the motion for summary judgment (Doc. 50) filed by Defendants Board of Education of the Illinois Department of Juvenile Justice School District #428 and Illinois Department of Corrections is **DENIED**. The Court **GRANTS in part and DENIES in part** the motion for summary judgment (Doc. 48) filed by Plaintiff Antonio Monroe. Specifically, Monroe's motion is granted as to whether he is a "prevailing party" within the meaning of 20 U.S.C. § 1415(i)(3)(B). His motion is denied as to the reasonableness of the fee award. The following issues remain to be determined at a bench trial:

- What are the reasonable hourly rates with which to compute the lodestar figure?

- Which billing entries concern work performed for the systemic claims (i.e., concerning students other than Monroe) and therefore cannot be included in computing the lodestar figure?

- After computation of the lodestar figure, what adjustments to the fee award are necessary?

Further, the Court **GRANTS** Defendants' motion for leave to file a response to Monroe's statement of facts (Doc. 57) and **DENIES as moot** Monroe's motion for leave to file additional authority (Doc. 61).

The Court will set a status conference by separate order for the purpose of discussing a potential referral of this case to mediation and setting a firm bench trial date.

**IT IS SO ORDERED.**

**DATED:  July 30, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**